**ALLEN OIL COMPANY, INC.,**
Petitioner-Appellee,

v.

**COMMISSIONER OF INTERNAL REV-
ENUE, Respondent-Appellant.**

No. 180, Docket No. 79–4117.

United States Court of Appeals,
Second Circuit.

Argued Oct. 11, 1979.

Decided Jan. 11, 1980.

William A. Friedlander, Atty., Tax Division, Dept. of Justice, Washington, D.C. (M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Stanley S. Shaw, Jr., Attys., Tax Division, Dept. of Justice, Washington, D.C., of counsel), for respondent-appellant.

Richard C. Bishop, Greenfield, Mass. (Levy, Winer, Hodos & Berson, P. C., Greenfield, Mass., of counsel), for petitioner-appellee.

Before MEDINA, MANSFIELD and MESKILL, Circuit Judges.

MANSFIELD, Circuit Judge:

■ The Commissioner of Internal Revenue appeals from a decision of the United States Tax Court filed March 15, 1979, holding that appellee taxpayer, Allen Oil Company, Inc. (Allen), is not a member of a "brother-sister controlled group" of corporations within the meaning of 26 U.S.C. § 1563(a)(2) and therefore is not liable for a tax deficiency asserted for its 1976 tax year by the Commissioner who disallowed a separate surtax exemption claimed by the taxpayer. We hold that the taxpayer and another corporation, Pioneer Petroleum Products, Inc. (Pioneer), are members of a brother-sister controlled group and hence are entitled to only a single surtax exemption between them. Accordingly, we reverse.

The taxpayer Allen is in the business of wholesale and retail distribution of fuel oil and related oil products. Its two shareholders are John J. Drago, who owns 150 shares or 30% of the taxpayer, and Francis D. Shanahan who owns 350 shares or 70%. Pioneer is also involved in the fuel oil distribution business and is wholly owned for the purposes of § 1563 by Francis D. Shanahan.[1] Allen and Pioneer each claimed separately a full surtax exemption for its taxable years ending July 31, 1976, and May 31, 1976, respectively. The Commissioner disallowed the taxpayer any surtax exemption on the ground that the taxpayer and Pioneer were members of a controlled group of corporations within the meaning of § 1563(a)(2) of the 1954 Code and that since only one of the group could receive the benefit of the exemption (in this case apparently Pioneer) Allen's claim to an exemption must be denied. The Tax Court reversed the Commissioner's finding of a deficiency, from which the Commissioner appeals.

The issue turns on the interpretation to be given to §§ 1561–1564 of the Internal Revenue Code, which restrict the situations in which multiple corporations may secure additional surtax exemptions, limiting a "controlled group of corporations" to only one surtax exemption. A "controlled group of corporations" is defined by § 1563, which reads in pertinent part as follows:

"SEC. 1563. DEFINITIONS AND SPECIAL RULES

"(a) *Controlled Group of Corporations.* —For purposes of this part, the term 'controlled group of corporations' means any group of—

\* \* \* \* \* \*

(2) Brother-sister controlled group.— Two or more corporations if 5 or fewer persons who are individuals, estates, or trusts own (within the meaning of subsection (d)(2)) stock possessing—

(A) at least 80 percent of the total combined voting power of all classes of stock entitled to vote or at least 80 percent of the total value of shares of all classes of the stock of each corporation, and

(B) more than 50 percent of the total combined voting power of all classes of stock entitled to vote or more than 50 percent of the total value of shares of all classes of stock of each corporation, taking into account the stock ownership of each such person only to the extent such stock ownership is identical with respect to each such corporation."

The stock ownership of the taxpayer and Pioneer is as follows:

---

1. Shanahan actually owned, in his own name, 92.6% of the shares in Pioneer. The remaining 7.4% of the shares, however, were deemed to be owned by him, pursuant to the uncontested application of the attribution rules of § 1563(d)(2) and (e) of the Code.

|  | 80 Percent Test | | 50 Percent Test |
|---|---|---|---|
|  | Taxpayer | Pioneer | Identical |
| Francis D. Shanahan | 70% | 100% | 70% |
| John J. Drago | 30% | 0% | 0% |
|  | 100% or 70% | 100% | 70% |

The parties have stipulated that the 50% control test of § 1563(a)(2)(B) is met by Shanahan's holding of 70% identical ownership of both corporations. The controversy, then, is whether the 80% test of subparagraph (2)(A) is met, and specifically whether Drago's stock ownership in the taxpayer may be counted for the purpose of meeting the 80% test even though he does not own any stock in Pioneer, the other member of the controlled group. If Drago's stock ownership is counted, the 80% test is met since "five or fewer" persons will own 100% of both corporations. On the other hand, if Drago's stock is not counted, the 80% test is not met. The issue, in short, is whether the 80% test fixed by subparagraph (2)(A) is limited by a common ownership requirement.[2]

The taxpayer contends that it cannot be considered part of a controlled group of corporations with Pioneer because Shanahan owns less than 80% of the taxpayer's stock and Drago's 30% stock ownership of the taxpayer cannot be counted for the purposes of the 80% test because he owns no Pioneer stock. According to the taxpayer, only persons owning stock in both corporations may be members of the groups of "five or fewer persons" for the purpose of the 80% test.

The Commissioner, on the other hand, contends that Drago's stock ownership can be counted even though he owns no Pioneer stock because Drago and Shanahan as a two-person group own at least 80% of the taxpayer and Pioneer. Indeed, the Commissioner has promulgated regulations in support of its position that each shareholder in the "five or fewer" group need not own stock in each of the corporations in order for its stock ownership to be counted.[3] Regs. 1.1563–1(a)(3).

The issue has been litigated and decided in two other circuits and is being litigated in two more. In 1976 the Tax Court invalidated the Commissioner's regulation on the

---

2. To illustrate, no issue would be presented if Shanahan owned 80% of the taxpayer instead of only 70%. The Commissioner would then admittedly be entitled to treat the two corporations as "brother-sister" since there would be 80% identical ownership. Similarly, if Drago, in addition to his 30% ownership of the taxpayer, also owned a single share of Pioneer, the 80% ownership test would be met.

3. Reg. 1.1563–1(a)(3) defines a brother-sister controlled group as two or more corporations, if:

"[T]he same five or fewer persons . . . own . . . *singly or in combination*, stock possessing

(a) At least 80 percent of the total combined voting power of all classes of stock entitled to vote or at least 80 percent of the total value of shares of all classes of the stock of each corporation; and

(b) More than 50 percent of the total combined voting power of all classes of stock entitled to vote or more than 50 percent of the total value of shares of all classes of stock of each corporation, taking into account the stock ownership of each such person only to the extent such stock ownership is identical with respect to each such corporation." (Emphasis added).

Example 1 of Reg. Sec. 1.1563–1(a)(3)(ii) provides:

"Ex. (1). The outstanding stock of corporations P, Q, R, S and T, which have only one class of stock outstanding, is owned by the following unrelated individuals

| Individuals | Corporations | | | | | Identical Ownership |
|---|---|---|---|---|---|---|
|  | P | Q | R | S | T |  |
| A | 60% | 60% | 60% | 60% | 100% | 60% |
| B | 40% | — | — | — | — |  |
| C | — | 40% | — | — | — |  |
| D | — | — | 40% | — | — |  |
| E | — | — | — | 40% | — |  |
| Total | 100% | 100% | 100% | 100% | 100% | 60% |

Corporations P, Q, R, S and T are members of a brother-sister controlled group."

grounds that the stock interests of a shareholder who owned no stock in one or more corporate members of the group could not be counted for the purpose of meeting the 80% test. *Fairfax Auto Parts of Northern Virginia, Inc. v. Commissioner*, 65 T.C. 798 (1976); *T.L. Hunt, Inc. v. Commissioner*, T.C.M. 1976–221. The Fourth Circuit, however, reversed the *Fairfax* decision, 548 F.2d 501 (4th Cir.), cert. denied, 434 U.S. 904, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977). The Eighth Circuit then reversed the Tax Court's decision in *Hunt*, 562 F.2d 532 (8th Cir.). In *Baloian v. Commissioner*, 68 T.C. 620 (1977), the Tax Court reconsidered the issue but declined to change its position. The *Baloian* case is currently on appeal to the Ninth Circuit while *Delta Metal Forming Co. Inc.*, T.C.M. 1978–354, another case in which the Tax Court declined to change its position, is on appeal to the Fifth Circuit. And in this case the Tax Court again adhered to its position.

Nothing in the legislative history of § 1563(a)(2) or in its application points in favor of the Tax Court's interpretation as against that of the Commissioner. In such a situation we favor applying literally the plain language of § 1563(a)(2)(A) as Congress wrote it, which, unlike the provision of subparagraph (2)(B) with respect to the 50% test, does not limit the 80% stock ownership requirement to stockholders owning stock in each corporation. In contrast, § 1563(a)(2)(B) clearly imposes a common ownership requirement. Indeed it requires that only each stockholder's identically owned percentage in each corporation may be counted in determining whether the 50% requirement is met by adding the clause "taking into account the stock ownership of each such person only to the extent such stock ownership is identical with respect to each such corporation."

■ Absent some illumination from the legislative history, we must conclude that if Congress had intended to limit the 80% test to situations where each stockholder owns shares in each member of the corporate group, it would have explicitly provided for it. Instead, it expressly required that only identically owned stock be counted for the 50% test and imposed no common ownership condition upon computation of stock ownership for the 80% test.

The taxpayer first contends that since the phrase "five or fewer persons" is the subject of both subparagraphs (2)(A) and (2)(B) both the 80% test and the 50% test must be satisfied by the same "five or fewer persons." Next the taxpayer argues that the phrase "each such person" in subparagraph (2)(B) refers to the same "five or fewer persons" who own at least 80% of each corporation so that each person counted for the purpose of the 80% test must also be counted for the purpose of the 50% test. According to the taxpayer, then, a common ownership requirement must be applied to the 80% test of subparagraph (2)(A).

■ We must reject the taxpayer's argument as a highly strained and convoluted reading of the statute. Moreover, it proves too much. To read such a requirement into the 80% test would seriously weaken subparagraph (2)(B) and its 50% test since the 80% requirement if subjected to common ownership on the part of the group of five or fewer, would then tend to overlap or swallow the 50% identical ownership requirement. Normally, a statute must, if reasonably possible, be construed in a way that will give force and effect to each of its provisions rather than render some of them meaningless. *FTC v. Manager, Retail Credit Co.*, 169 U.S.App.D.C. 271, 277, 515 F.2d 988, 994 (D.C.Cir.1975); *United States v. Blasius*, 397 F.2d 203, 207 (2d Cir. 1968), cert. dismissed, 393 U.S. 1008, 89 S.Ct. 615, 21 L.Ed.2d 557 (1969). The taxpayer's interpretation here would, as a practical matter, come close to eliminating the 50% test despite Congress' intent to have two separate tests. As we read the statute, the purpose of the "five or fewer persons" requirement is to insure that after it has been determined which shareholders meet the 80% test and the 50% test, respectively (they need not be the *same* shareholders), the aggregate number of shareholders must not exceed five.

The legislative history is not inconsistent with the plain meaning of the statute.[4] Moreover, the Commissioner's interpretation does have a certain logic to it. According to the Commissioner, the 80% test is designed to assure that within the group of five persons or fewer the overall control of or financial interest in each of the corporations will beyond question be substantially more than 50% (i. e., 80%), whereas the 50% test is intended to assure that there will be a minimum commonality or community of interest between members of the five or fewer persons in control; otherwise there might be no tie between persons controlling one corporation and those controlling another.

The taxpayer, of course, has a different view of the purposes of the two tests. It is the taxpayer's understanding that the purpose of the 50% test is to insure that five or fewer persons have common control of two or more corporations and that the purpose of the 80% test is to insure that those same five or fewer persons have at least an 80% financial interest in each corporation. Under this view, as stated by Judge Webster in his dissent in *Hunt*, 526 F.2d at 536, the 80% test is meaningless unless it is the same group of five or fewer persons that own 80% of each company within the controlled group.

Unfortunately for the taxpayer, however, this interpretation, for the reasons stated above, is not supported by the plain language of the statute. Nor is the Commissioner's interpretation unreasonable or meaningless; it insures that the stock is closely held. Thus, even though five or fewer persons may satisfy the 50% control test, the tax exemption of a corporate member of the group is saved only if shareholders who are not part of the group of five or fewer own more than 20% of its stock.

■ We therefore defer and give effect to the Commissioner's construction since it is not plainly inconsistent with the statute and it implements the congressional mandate in a reasonable way. As stated by the Supreme Court in *National Muffler Dealers Ass'n, Inc. v. United States*, 440 U.S. 472, 488, 99 S.Ct. 1304, 1312, 59 L.Ed.2d 519 (1979), "the [taxpayer], however, needs more than a plausible policy argument to prevail here. . . . The choice among reasonable interpretations is for the Commissioner, not the courts." See also *Fulman v. United States*, 434 U.S. 528, 533, 98 S.Ct. 841, 55 L.Ed.2d 1 (1978); *Bingler v.*

---

**4.** See General Explanation of Treasury Tax Reform Proposals, 14 House Hearings before the Committee on Ways and Means on Tax Reform, 1969, 91st Cong., 1st Sess., p. 5394, which states:

"(2) *Brother-sister groups.*—A group of corporations in which five or fewer persons own, to a large extent in identical proportions, at least 80 percent of the stock of each of the corporations. This provision expands present law by considering the combined stock ownership of five individuals, rather than one individual, in applying the 80-percent test. Even the mild 6-percent penalty under existing law for brother-sister corporations claiming multiple surtax exemptions is [made] largely ineffectual because of the present requirement that one person own 80 percent of the stock of each corporation before the group of corporations is subject to the penalty.

"However, in order to insure that this expanded definition of brother-sister controlled group applies only to those cases where the five or fewer individuals hold their 80 percent in a way which allows them to operate the corporations as one economic entity, the pro-

posal would add an additional rule that the ownership of the five or fewer individuals must constitute more than 50 percent of the stock of each corporation considering, in this test of ownership, stock of a particular person to the extent that it is owned identically with respect to each corporation."

Interestingly enough, both the taxpayer and the Commissioner find support for their contrary positions in this same General Explanation. According to the Commissioner, for example, the second paragraph of the explanation suggests that different persons may be taken into consideration in applying the 80% and the 50% tests and that the common ownership requirement is only applicable for purposes of the 50% test. Moreover, the words in the first paragraph, "to a large extent in identical proportions" merely indicate that there will be identical ownership "to a large extent" among those persons whose ownership is considered for purposes of the 80% test. Thus, there need not be common ownership among all those persons taken into consideration for purposes of the 80% test, and the common ownership that is required is specified by the 50% test.

*Johnson*, 394 U.S. 741, 749–50, 89 S.Ct. 1439, 22 L.Ed.2d 695 (1969), quoting *Commissioner v. South Texas Lumber Co.*, 333 U.S. 496, 501, 68 S.Ct. 695, 92 L.Ed. 831 (1948); *Solomon v. Commissioner*, 570 F.2d 28, 32 n.4 (2d Cir. 1977); *Poirer & McLane Corp. v. Commissioner*, 547 F.2d 161, 167 (2d Cir. 1976), *cert. denied*, 431 U.S. 967, 97 S.Ct. 2925, 53 L.Ed.2d 1063 (1977).

Accordingly, we reverse the Tax Court, uphold the validity of the regulation, and remand the case for entry of judgment in favor of the Commissioner.