**DELTA METALFORMING CO., INC.,
Petitioner–Appellee,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellant.**

No. 78–3699.

United States Court of Appeals,
Fifth Circuit.

Dec. 8, 1980.

---

M. Carr Ferguson, Asst. Atty. Gen., Tax Div., U. S. Dept. of Justice, Gilbert E. Andrews, Acting Chief, Appellate Section, N. Jerold Cohen, Chief Counsel, Internal Revenue Service, William A. Friedlander, Stanley S. Shaw, Jr., Attys., Tax Div., Dept. of Justice Washington, D. C., for respondent–appellant.

Wynne & Jaffe, Neil J. O'Brien, Dallas, Tex., for petitioner–appellee.

Before BROWN, HENDERSON and SAM D. JOHNSON, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

Today we decide an issue of corporate income tax reaching a result contrary to majorities of the Second, Fourth and Eighth Circuit Courts of Appeal. Unlike our respected brethren and sisters, we hold with the Tax Court, the persuasive dissent of Judge William Webster, and more recently the decision of the Court of Claims, that a person must own stock in each member of an alleged brother–sister controlled group to satisfy the 80% test under § 1563(a)(2)(A) and so be denied its own separate surtax exemption.

1. Section references are to the Internal Revenue Code of 1954, effective for the year in question, 1975. Section 11(d) was repealed in

I.

The facts are not in dispute. The taxpayer company, Delta Metalforming Company, is a Texas corporation. Three individuals own its outstanding stock. Those three persons, together with a fourth person, also own all of the voting stock of two other corporations, Delta Steel Buildings and Delta Engcon. The following chart represents the percentage of ownership of the three Delta companies for 1975:

| Stockholder | Taxpayer Corp. Delta Metalforming | Delta Steel | Delta Engcon | Identical ownership |
|---|---|---|---|---|
| | Percent | Percent | Percent | Percent |
| W. T. Slayton | 36.4 | 26.7 | 26.4 | 26.4 |
| L. L. Eddins | 27.2 | 19.9 | 20.8 | 19.9 |
| J. G. Ellis | 36.4 | 26.7 | 26.4 | 26.4 |
| F. T. Sharp | –0– | 26.7 | 26.4 | –0– |
| Total | 100 | 100 | 100 | 72.7 |

In 1975 Delta Metalforming took the surtax exemption allowed by § 11(d) on its corporate income tax return, as did Delta Steel.[1] At that time § 11(a) imposed a tax on taxable corporate income. Section 11(c) imposed a 26 percent surtax on income exceeding the surtax exemption. The surtax exemption under § 11(d) was $25,000, except as provided in § 1561. Section 1561 provided that members of a controlled group of corporations were limited to one $25,000 exemption, which they could share. Section 1563(a)(2) defined a "brother–sister controlled group" by two tests of stock membership, a 50% test and a 80% test.

In 1977 the Commissioner assessed a tax deficiency against Delta Metalforming. The Commissioner determined that, under § 1563(a)(2), Delta Metalforming was a member of a brother–sister controlled group of corporations with Delta Steel and Delta Engcon. Since the surtax exemption had already been claimed by Delta Steel, the Commissioner found that Delta Metalforming was not entitled to its own separate surtax exemption.

Delta Metalforming filed a petition with the U. S. Tax Court to redetermine the

1978 by P.L. 95–600, Nov. 6, 1978, but the basic statutory scheme remains. See, § 1561(a) as amended by P.L. 95–600, Nov. 6, 1978.

asserted deficiency. The parties stipulated that Delta Steel and Delta Engcon met the 50% test in § 1563(a)(2)(B), but disagreed on whether Delta Metalforming satisfied the 80% test. The Tax Court, following its earlier decisions and declining to follow contrary results by three Circuit Courts of Appeal, held that Delta Metalforming did not come within the 80% test, and so held for the taxpayer. *Delta Metalforming Co. v. Commissioner*, T.C.M. 1978–354. The Government appeals. We affirm.[2]

## II.

This appeal concerns the meaning of the 80% test in § 1563(a)(2)(A). Section 1563(a)(2) provides:

§ 1563. Definitions and special rules

(a) Controlled group of corporations.– For purposes of this part, the term "controlled group of corporations" means any group of–

\*   \*   \*   \*   \*   \*

(2) Brother–sister controlled group.– Two or more corporations if 5 or fewer persons . . . own . . . stock possessing–

(A) at least 80 percent . . . of the total value of shares of all classes of the stock of each corporation, and

(B) more than 50 percent . . . of the total value of shares of all classes of stock of each corporation, taking into account the stock ownership of each such person only to the extent such stock ownership is identical with respect to each such corporation.

The 80% requirement is met only if the stock of one stockholder, F. T. Sharp, who owns shares in Delta Engcon and Delta Steel but not in Delta Metalforming, may be counted.

**2.** The taxpayer also has the same issue pending for the years 1972–74 in the U.S. District Court for the Northern District of Texas. *Delta Metalforming Co. v. United States*, No. CA 3–78–1469–G (filed Dec. 7, 1978).

**3.** Treas.Reg. § 1.1563–1(a)(3)

"(3) Brother–sister controlled group–(i) The term "brother–sister controlled group" means two or more corporations if the same five or fewer persons . . . own . . . singly or in combination, stock possessing–

The Government argues, as it did in the Tax Court, that for the purposes of determining whether a group of corporations meets the 80% ownership requirements of § 1563(a)(2)(A) and so constitutes a brother–sister controlled group, an individual must merely be one of the five or fewer individuals who *collectively* own at least 80% of the stock of all the corporations. Thus, an individual need *not* own stock in each of the two or more corporations to have his stock ownership tabulated toward the 80%. The Government relies in part on Income Tax Regulation 1.1563–1(a)(3) which defines a brother–sister controlled group as two or more corporations if, "the same five or fewer persons . . . own . . . singly or in combination," stock satisfying the 80 and 50 percent tests.[3]

Delta Metalforming, however, says that an individual's stock ownership can be added into the 80% ownership requirement only when that individual owns stock in *each and every* member of the alleged brother–sister controlled group. Since Sharp owned no stock in Delta Metalforming, his stock in Delta Steel and Delta Engcon could not then be taken into consideration for the 80% test, the percentage of stock ownership falls below 80, Delta Metalforming is not a member of a controlled group, § 1561 would not apply, and Delta Metalforming would be entitled to its own separate surtax exemption.

Several Courts have grappled with these arguments with inconsistent results. The Tax Court first considered the meaning of the 80% test in *Fairfax Auto Parts of Northern Virginia, Inc. v. Commissioner*, 65 T.C. 798 (1976). In *Fairfax* the Court, with

(a) . . . at least 80 percent of the total value of shares of all classes of the stock of each corporation; and

(b) . . . more than 50 percent of the total value of shares of all classes of stock of each corporation, taking into account the stock ownership of each such person only to the extent such stock ownership is identical with respect to each such corporation."

four Judges dissenting, held that a person must own stock in each member of the controlled group in order for its stock ownership to be taken into account to satisfy the ownership tests of § 1563(a)(2). The Court examined Income Tax Regulation 1.1563–1(a)(3) but found it an "unrealistic and unreasonable interpretation of the statutory language." 65 T.C. at 802. The Court also analyzed the language of the statute itself, its legislative history, and basic purpose to conclude that each person must own stock in each controlled group corporation. In a brief per curiam opinion the Fourth Circuit reversed, upholding the Regulation. *Fairfax Auto Parts of Northern Virginia v. Commissioner*, 548 F.2d 501 (4th Cir.), *cert. denied*, 434 U.S. 904, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977), *noted and criticized*, 1976, Brigham Young U.L.Rev. 1000.

Meanwhile the Tax Court had already followed its position to hold for the taxpayer in *C.L. Hunt, Inc. v. Commissioner*, T.C.M. 1976–221. The Eighth Circuit also reversed, *T.L. Hunt, Inc. v. Commissioner*, 562 F.2d 532 (8th Cir. 1977), this time, over a vigorous dissent. Dissenting Judge William Webster would invalidate Regulation 1.1563–1(a)(3) as an improper and unintentional penalty on closely held corporations. Despite Judge Webster's dissent, the Eighth Circuit subsequently followed *Hunt* in *Yaffe Iron and Metal Corp. v. United States*, 593 F.2d 832 (8th Cir. 1979).

The Tax Court again adhered to *Fairfax* in *Allen Oil Co. v. Commissioner*, T.C.M. 1979–88,[4] which the Second Circuit overturned. *Allen Oil Co. v. Commissioner*, 614 F.2d 336 (2d Cir. 1980). Ever determined, despite reversals by the Second, Fourth and Eighth Circuits, the Tax Court followed *Fairfax* in *Charles Baloian Co. v. Commissioner*, 68 T.C. 620 (1977), now pending on

appeal in the Ninth Circuit [78–2438 & 78–2508, appeal argued July 10, 1980] as did the Court of Claims in *Vogel Fertilizer Company v. United States* [69–78, August 13, 1980] (Ct.Cl.1980).

In our case the Tax Court again upheld *Fairfax* and ruled for the taxpayer. *Delta Metalforming Co. v. Commissioner*, T.C.M. 1978–354.

### III.

■ We begin, as we must and should, with the language of the statute itself. *Southeastern Community College v. Davis*, 442 U.S. 397, 405, 99 S.Ct. 2361, 2366, 60 L.Ed.2d 980, 987–88 (1979) ("It is elementary that '[t]he starting point in every case involving the construction of a statute is the language itself.'") See also *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82, 91 (1979). The critical words of § 1563(a)(2) define a "controlled group of corporations." A "brother–sister controlled group" is one of:

Two or more corporations if 5 or fewer persons who are individuals, estates, or trusts own . . . stock possessing—

(A) at least 80 percent . . . of each corporation, and

(B) more than 50 percent . . . of each corporation, taking into account the stock ownership of each such person only to the extent such stock ownership is identical with respect to each such corporation.

We look for the plain meaning of these words as our threshold inquiry. Yet the statute does not plainly say that there may be only one group of "5 or fewer persons" for a controlled group. Nor does the statute plainly say that there may be more than one such group. However, in our view, while the language may be a little short on

---

4. As the Tax Court explained in the opinion below, T.C.M. at ___, the Tax Court has national jurisdiction and, despite reversals by Courts of Appeals, should, except in cases geographically destined for a disapproving Circuit, follow its conviction that its original result was correct until decided otherwise by the Supreme Court. *Lawrence v. Commissioner*, 27 T.C. 713 (1957). Although a series of reversals may incline the Tax Court to bow to higher authori-

ty, see *Bankers Union Life Insurance Co. v. Commissioner*, 62 T.C. 661, 675 (1974), the switching of positions by the Tax Court may lead to confusion or may constitute an improper performance of the Court's function. See *Bradford v. Commissioner*, 60 T.C. 253, 261 (1973) (Drennan, J., dissenting).

This practice at one time was severely criticized by one or more Judges of this Court.

plainness, the words of the statute, its purpose, and legislative history compel a reading requiring that for the 80% test each shareholder must own stock in each of the corporations.

Although in the quest for plain meaning dictionary definitions may be deficient, in the lexicon of a statutory framework as complex and diverse as the Internal Revenue Code these meanings are helpful here. Section 1563(a) defines a "controlled group" of corporations. The concept of "control" is the "[p]ower or authority to manage, direct, superintend, restrict, regulate, direct, govern, administer, or oversee," Black's Law Dictionary 399 (4th ed. 1951), or the act or fact or power "[t]o exercise restraining or directing influence over; to dominate; regulate; hence, to hold from action; to curb; subject...." Webster's New International Dictionary of the English Language 580 (2d ed. 1958) (definition 4). A group is an "assemblage of persons or things regarded as a unit because of their comparative segregation from others; a cluster; aggregation; ... [a]n assemblage of objects in a certain order or relation, or having some resemblance or common characteristic." Id. at 1104 (definitions 2 and 3). Thus, a controlled group of corporations is an assemblage of corporations with a common characteristic and the power or authority to manage, regulate or oversee the other(s). Moreover, subsection 1563(a)(2) defines a kind of "controlled group" entitled "brother–sister." This subtitle contemplates a relationship of close ties and common qualities. Hence, both the title and subtitle of the statute in question underscore the common connections, interrelationships and mutual influences of the group.

Moreover, subsection 1563(a)(2) defines a kind of "controlled group" entitled "brother–sister." A "brother" is defined as "[o]ne related or closely united to another by some common tie or interest, as of ... profession, ... toil, etc.," and "[o]ne that resembles another in qualities or traits," id. at 343 (definitions 4 and 5), while a "sister" refers to "one of the same kind, or of the same condition, regarded as nearly related...." Id. at 2349 (definition 3). Hence the broth-

er–sister subtitle of the statute, like the title, contemplates a relationship of close ties and common qualities and underscores the common connections and mutual influences of the prescribed group.

This "brother–sister controlled group" is then defined in more precise detail. The group must have two or more corporations where "five or fewer .persons" own stock satisfying the 80% test and the 50% test. The statute does not say specifically that the very same five or fewer persons must satisfy both tests and it is possible that unrelated sets of five or fewer persons could do. Yet, that reading would do violence to the common control introduced and emphasized by the statutory title and subtitle of § 1563 and the underlying congressional policies.

Moreover, the term made up of the words "five or fewer persons" applies to both 80% and 50% tests. These words constitute, as the Fairfax majority put it, the "conjunctive subject" of the two tests which follow. 65 T.C. at 803. Since the same words apply to both tests, and the tests are characterized by sibling kinship, it would then make sense that the very same five or fewer persons should satisfy both tests. Further, the 50% test uses the language "each such person" in describing the nature of the group. The grammatical antecedent for "each such person" is "five or fewer persons." Since the phrase "five or fewer persons" is the antecedent for the 80% test as well as the 50% test, it is reasonable to conclude that "each such person" in the second test would also apply to the first test. Accord, Fairfax Auto Parts of Northern Virginia, Inc. v. Commissioner, 65 T.C. at 803; T.L. Hunt v. Commissioner, 562 F.2d at 536 (Webster, J., dissenting).

Common sense also suggests that a person should not be considered part of a group that controls a corporation where the person has no interest in, influence over, or control of the corporation. Sharp should not be included in the controlled group because he had no connection with Delta Metalforming. Nor should Sharp be penalized

because some of his co–shareholders control another corporation, in which he has no interest, unless the co–shareholders own 80% of Sharp's corporation.[5]

· Our reading of the statute is also consistent with its purpose. The 50% test was enacted as one of control. Hearings on the Subject of Tax Reform Before the House Comm. on Ways and Means, 91st Cong., 1st Sess. 5394 (1969). Identical interest insures a degree of control necessary for the corporations to operate as one economic entity. The 80% test, however, is one of financial interest. The 80% financial interest test makes sense when those with financial interest are also those with control of the corporations. In the words of the commentators, "to interpret the statute so that the 80 percent test can be met by persons having ownership in only one corporation ignores the obvious relationship between the 50 percent test and the 80 percent test, i. e., the exercise of control by persons with a substantial financial interest in the corporations." Thomas, "Brother–Sister Multiple Corporations–The Tax Reform Act of 1969 Reformed By Regulation, 28 Tax.L.Rev. 65, 82 (1972). The General Explanation of Treasury Tax Reform Proposals underscores that element of identity and connecting links. A brother–sister group is a group of corporations in which five or fewer persons own, *to a large extent in identical proportions*, at least 80 percent of the stock of each of the corporations. Treasury Department's General Explanation Hearings on the Subject of Tax Reform Before the House Comm. on Ways and Means, at 5394 (emphasis added). The Treasury also explains:

**5.** In addition, a common ownership requirement is consistent with what seems to be the natural meaning of the phrase "5 or fewer" in this context. We think the phrase "5 or fewer" refers to numbers five, four, three, two and one but not to zero.

**6.** The Treasury stated:
Present law defines a brother–sister controlled group as a group of corporations in which the voting stock or value of shares of each member is owned 80 percent by the same person (i. e., individual, estate or trust). Under the proposal, the present definition

[I]n order to insure that this expanded definition of brother–sister controlled group applies only to those cases where *the* five or fewer individuals hold *their* 80 percent in a way which allows *them* to operate the corporations as *one economic entity*, the proposal would add an additional rule that the ownership of *the* five or fewer individuals must constitute more than 50 percent of the stock of each corporation.... Expanding the 80–percent ownership test from one person to five will close the present opportunity for easy avoidance of that 80–percent test. However, adding the 50–percent identical ownership test will insure that the new expanded definition is limited to cases where the brother–sister corporations are, in fact, *controlled by the group of stockholders as one economic enterprise.*

*Id.* (emphasis added). While our brother–sister Courts have gleaned different guidance from these words, see *Fairfax*, dissent, 65 T.C. at 809–10; *Allen Oil Co. v. Commissioner*, 614 F.2d at 340 n.4 (interpreting the explanation to mean that common ownership is not necessary), we read the explanation to mean that the same economic entity was intended to be required. See also Hearings on the Subject of Tax Reform Before the House Comm. on Ways and Means, at 5050. Indeed, when the Treasury presented its Tax Reform Proposals in April 1969 it explained that the "same" five or fewer persons must own stock in "each" corporation before their stock ownership will be counted, and "these" same five or fewer persons must own over 50% of the stock identically regarding each corporation.[6]

would be changed so that a group of corporations would constitute a brother–sister controlled group if (1) the *same five* or fewer persons own at least 80 percent of the voting stock, or value of shares of *each* corporation, and (2) *these* five or fewer individuals own more than 50 percent of the voting power or value of shares of each corporation considering a particular person's stock only to the extent that it is owned identically with respect to each corporation.
See discussion in Bonovitz, Brother–Sister Controlled Groups under Section 1563: The 80 Per-

Similarly, the Senate and House Reports explain that the very same five or fewer persons must satisfy the 50% and 80% tests. The House Report, which contains substantially the same language as the Senate Report on this point, states:

This bill expands this definition to include two or more corporations which are owned 80 percent or more . . . by five or fewer persons . . . provided that *these* five or fewer persons own more than 50 percent of each corporation when the stock of each person is considered only to the extent it is owned identically with respect to each corporation.

See, H.R.Rep.No.91–413, 91st Cong., 1st Sess. (1969), *reprinted in* [1969] U.S.Code Cong. & Ad.News, pp. 1645, 1748; S.Rep. No.91–552, 91st Cong., 1st Sess. (1969), *reprinted in* [1969] U.S.Code Cong. & Ad. News, pp. 2027, 2167 (emphasis added). "These" very same five or fewer persons–only one combination with the same members–one economic entity–must comprise the asserted controlled group.

A closer look at the reasons for the adoption of § 1563 also suggests that common ownership is required. The surtax exemption was enacted to benefit small corporations. S.Rep., U.S.Code Cong. & Admin. News 1969 at 2155; H.R.Rep., U.S.Code Cong. & Admin.News 1969 at 1745. The controlled group exception to the exemption was adopted in 1964 to prevent the proliferation of multicorporate structures by a single business to take undue advantage of the surtax exemption. Rev.Act of 1964, 78 Stat. 116, § 235(a). Jt. Comm. on Internal Revenue Taxation, 88th Cong., 1st Sess., Summary of the President's 1963 Tax Message 45 April 1963); H.R.Rep.No.749, 88th Cong., 1st Sess. (1963), 1964–1 C.B. (Part II) 240–41; S.Rep.No.830, 88th Cong., 2d Sess. (1964), 1964–1 C.B. (Part II) 653–55.

Originally a brother–sister controlled group applied only to one individual, inherently, the "same" person. The statute was amended in 1969 to enlarge the group from one individual to five or fewer to prevent tax benefits through multiple corporations. Tax Reform Act of 1969, 83 Stat. 599, § 401; S.Rep., U.S.Code Cong. & Admin. News 1969 at 2165; H.R.Rep., U.S.Code Cong. & Admin.News 1969 at 1745 ("[L]arge organizations which operate through multiple corporations and which are not in reality 'small businesses' should not be allowed to receive the substantial and unintended tax benefits resulting from the multiple use of the surtax exemption and these other provisions.") The definition of a brother–sister controlled group was expanded to include "the combined stock ownership of five individuals, rather than one individual, in applying the 80 percent test," H.R.Rep., U.S.Code Cong. & Admin.News 1969 at 1956, and the 50% test was added. There is nothing in the legislative history to suggest that the kind of group which would and would not be entitled to the exemption–the "sameness"–was to be altered. Absent a clear indication to the contrary, it is reasonable to assume that the persons within the control group would continue to constitute the ownership group of each corporation. The House and Senate Reports do not indicate any intention to change the constituents of the ownership group. Indeed, all of the examples submitted to Congress by the Treasury to illustrate the operation of the exemption involve shareholders who own stock in each corporation. The absence of contrary examples strongly suggest that the Treasury did not contemplate the definition of the 80% test group by strangers to the 50% test group.

Further, if Congress had intended to change the requirement of sameness or common ownership, it certainly knew how to do so. See Thomas, 28 Tax L.Rev. at 79 ("One thing is certain: If Congress had intended the interpretation adopted by the regulation, it could have drafted a statute which stated it more accurately.") Indeed, it seems to us that the Treasury–who origi-

cent Ownership Test, 28 Tax Law 511, 515 (1975); Weisman, Brother–Sister Controlled Corporations: On and Off the Road To the

Supreme Court With an Edsel, 1978 Taxes 475, 480–81.

nally endorsed the 1969 amendment and on whom congressional committees extensively rely—would have suggested language (such as that used in their subsequent corollary regulation) had it intended to reject the common ownership requirement.

■ As we read § 1563(a)(2) and its related authority, we cannot but conclude that Treasury Regulation 1.1563–1(a)(3) comprises an unwarranted extension. The Regulation defines a brother–sister controlled group as two or more corporations

if *the same* five or fewer persons ... own ... *singly or in combination*, stock possessing [the requisite amounts]. . . .

(Emphasis added). We are well aware that great weight must be afforded to "contemporaneous constructions by those charged with administration" of the Internal Revenue Code. *Bingler v. Johnson*, 394 U.S. 741, 749–50, 89 S.Ct. 1439, 1445, 22 L.Ed.2d 695, 703–04 (1969). We may invalidate a revenue regulation only if it is unreasonable and clearly inconsistent with the statute. *Id.*; *National Muffler Dealers Association, Inc. v. United States*, 440 U.S. 472, 488, 99 S.Ct. 1304, 1312, 59 L.Ed.2d 519, 531 (1979) ("the [taxpayer] . . . needs more than a plausible policy argument to prevail here. . . . The choice among reasonable interpretations is for the Commissioner, not the Courts.") See also *Arthur Fulman v. United States*, 434 U.S. 528, 533, 98 S.Ct. 841, 845, 55 L.Ed.2d 1, 8 (1978). Nonetheless, where a regulation is unreasonable, the Courts do not extend the Treasury unfettered authority and have not hesitated to invalidate the errant regulation. *United States v. Cart-*

*wright*, 411 U.S. 546, 550, 93 S.Ct. 1713, 1716, 36 L.Ed.2d 528, 533 (1973). " '[I]t does not follow that, because [the Commissioner] has a choice of alternatives, his choice should be sustained where the alternative chosen is unrealistic. In such a situation the regulations embodying that choice should be held to be unreasonable.' " (quoting authority). *Id.* at 557, 93 S.Ct. at 1720, 36 L.Ed.2d at 537; *Texas Instruments v. United States*, 551 F.2d 599, 610 (5th Cir. 1977).[7]

With all deference due treasury regulations, we cannot accept Reg. 1.1563–1(a)(3)(i). What the Treasury has done is unjustifiably expand the statute without basis in legislative intent, history or logic. The words "singly or in combination" are meaningless when applied to the 50% test since an identity of ownership is already statutorily mandated. See Bonovitz, 28 Tax Lawyer at 530 ("The legislative history of § 1563(a)(2) unequivocally requires common ownership for purposes of the section's 80 percent test. The 80 percent test, which is a financial interest test, and the 50 percent test, which is a control test, only have independent significance if the 80 percent test requires common ownership.") Indeed, from the initial promulgation of the Treasury regulations, there was a ground swell of critical protest from the commentators. Considering that commentators' criticism is neutral in the sense that in tax law what today is sauce for the goose turns out to be sauce for the gander, the overwhelming opposition has special significance.[8]

And Judge Webster cogently explained,

---

7. According to at least one commentator, traditional deference to the Treasury's interpretation is unavailing here. Weisman, 1978 Taxes at 482. He argues that (1) the statute is definitional and should not be extended beyond its narrow meaning without Congressional approval, (2) there are fundamental inconsistencies between the Treasury's interpretation of the statutory language and Congressional intent, and (3) the tax policy and functions underlying the purpose of the statute constitute "weighty reasons" for a Court to decline to defer to the administrative interpretation of the Treasury. *Id.*

8. See Bonovitz, 28 Tax Lawyer 511; Pearlman, "Recasting the Multiple Corporate Group After the Multiple Surtax Exemption Ends," 41 J. Taxation 194 (1974); Thomas, "Brother–Sister Multiple Corporations–The Tax Reform Act of 1969 Reformed by Regulation," 28 Tax L.Rev. 65 (1972); Kringel, "Multiple Corporation Proposed Regulations Raise More Questions Than They Answer," 36 J. Taxation 358 (1972); Libin & Abramowitz, "Multiple Corporations: A Surprising Interpretation of Sec. 1563(a)(2) and Temporary Regulations," 3 Tax Advisor 326 (1971). See also Note, "Disallowance of Surtax Exemption to Brother–Sister Corporations–Stock Ownership Test Under Sections 1551 and 1563, 1976 Brigham Young L.Rev. 1000, 1017.

It is not the smallness of the number of persons in each company that triggers § 1563; it is the sameness of that small number. The 80 per cent financial interest requirement is meaningless unless it is the same group of five or fewer persons that own 80 per cent of each company within the controlled group. It is this requirement of "economic entity" which is entirely eviscerated by Reg. § 1–1563–1(a)(3).

562 F.2d at 537 (emphasis in original).

The Government argues that the Tax Court impermissibly reads the entire qualification of the 50% test, subparagraph (B) into the 80% test, subparagraph (A). This is incorrect. The 50% test requires identity of controlling ownership. We do not in any way engraft this identical interest requirement to the 80% test. However, what we do apply to the 80% test–which, as we explain, the statute requires us to do–is to apply the principle of common ownership to both 50 and 80% tests.

Moreover, the meaning of § 1563(a)(2) which the Government urges renders the 80% test superfluous. As Judge Webster pointed out, if control is already satisfied by 50% ownership, little if anything is added to require an additional 30% ownership by someone else. *Hunt* dissent, 562 F.2d at 537. See also Thomas, 28 Tax L.Rev. at 82–83. Nor does our reading improperly tend to "overlap or swallow" the 50% test as the Second Circuit has suggested. *Allen Oil Co. v. Commissioner*, 614 F.2d at 339. As we see it, the 80% ownership requirement in conjunction with the 50% identical ownership requirement work best in tandem. Each has a significant congressional purpose and the stockholding requirements

should be interpreted to ascribe to each a function that makes neither test superfluous, dominant or subordinate.

So we reject the contention that the common ownership requirement in the 80% test is "hardly a meaningful test," "trifling," and turning upon the "happenstance of symbolic but factually meaningless ownership of a single share." We refuse to rewrite the numerical requirements of the statute. Particularly in the area of federal taxation, we should not ignore percentage requirements obviously and specifically fixed by Congress. While the result may seem "arbitrary"–ownership of a single share may be critical–79% will not suffice while 80% will–revenue laws necessarily encompass maximums, minimums, cutoffs and the like. In that sense all specific standards expressed in numbers or percentages are arbitrary. One side of the line is IN, the other side OUT.

Moreover, stock ownership–or lack of ownership–or even a single share entails significant rights, opportunities and disabilities. The shareholder may vote to elect and remove directors, adopt, amend and repeal bylaws, adopt resolutions, affect extraordinary corporate matters, and see corporate books and records. See Henn, Law of Corporations §§ 188, 189, 192, 193, 194, 195 & 199 (2d ed. 1970). He also has standing to bring suit against an officer or director of the corporation who breaches his fiduciary duties to the entity, or under the Securities Act of 1934. See *id.* at § 200; *Rekant v. Desser*, 425 F.2d 872, 876 (5th Cir. 1970).[9]

Nor do we find the 80% test of § 1551 inconsistent with our position.[10] Since we

---

But see White, "The Tax Reform Act of 1969: Demise of Multiple Surtax Exemptions–When Too Much of a Good Thing Proved its Own Undoing," 16 Wayne, L.Rev. 1353 (1970).

**9.** *Rekant* held that shareholder with six shares of "practically worthless" stock had standing to sue under § 10(b). "It is a disconcerting thought that a shareholder with his tiny holding should have access to as powerful a weapon as § 10(b). The plaintiff, however, is in a fiduciary relationship to the other shareholders as a consequence of bringing a derivative ac-

tion in a class action." 425 F.2d at 876 n.7 (Wisdom, J.).

**10.** Section 1551(b)(2) reads:

DISALLOWANCE OF SURTAX EXEMPTION AND ACCUMULATED EARNINGS CREDIT.

(b) CONTROL.–For purposes of subsection (a), the term "control" means–

\* \* \* \* \* \*

(2) With respect to each corporation described in subsection (a)(3), the ownership by the

do not have a transfer situation we have neither a transferee nor a transferor corporation and the § 1551 test provides us with little guidance. Moreover, in 1969, when the 50–80% control tests were adopted in § 1563, the § 1551 regulations did not use the words "singly or in combination," which were the critical words for the § 1563 regulation.[11]

## IV.

Death, tide, time and taxes wait for no man. Neither do opinions. How unfortunate that in our verbal search for the non–biological tax–wise brother–sister the words and deeds of the Court of Claims in *Vogel Fertilizer Company v. The United States* [69–78, Aug. 13, 1980] (Ct.Cl.1980) came too late to spare us the labor of (and eager tax readers the task of reading and purchasing) this opinion. For we approve not only the result, but expressly adopt the opinion of that Court by Judge Bennett and the concurring opinion of Chief Judge Friedman.

The score for *Fairfax* is now 2 to 3. All eyes must now focus northward or westward.

AFFIRMED.

SAM D. JOHNSON, Circuit Judge, dissenting:

Without exception, the other Circuit Courts that have considered the meaning of the 80% test under Section 1563(a)(2)(A) have decided contrary to the majority opinion expressed here. At present, three Circuits have held that the 80% test, which constitutes part of the definition of a brother–sister controlled group, is not limited by a common ownership requirement. Thus, a person's stock ownership in a corporation may be counted for purposes of satisfying

the 80% test, even if that person does not own stock in each member of the controlled group. *Allen Oil Co. v. Commissioner*, 614 F.2d 336 (2d Cir. 1980); *Yaffe Iron & Metal Corp. v. United States*, 593 F.2d 832 (8th Cir.), *cert. denied*, 444 U.S. 843, 100 S.Ct. 85, 62 L.Ed.2d 55 (1979); *T.L. Hunt, Inc. v. Commissioner*, 562 F.2d 532 (8th Cir. 1977); *Fairfax Auto Parts of Northern Virginia, Inc. v. Commissioner*, 548 F.2d 501 (4th Cir.), *cert. denied*, 434 U.S. 904, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977).

As recognized by the majority opinion, this Court may not invalidate Treasury Regulation 1.1563–1(a)(3), which specifically disclaims any common ownership requirement for the 80% test, unless it is unreasonable and clearly inconsistent with the statute. Although imposing a common ownership requirement upon the 80% test might be viewed as the better result, it is by no means mandated by the wording of Section 1563(a)(2)(A) or by the legislative history. Both the language of the statute and the legislative history can be interpreted so as to support the Treasury Regulation. *See Vogel Fertilizer Co. v. United States*, No. 69–78 (Ct.Cl. Aug. 13, 1980) (Smith, J., dissenting). Consequently, the Treasury Regulation is neither unreasonable nor plainly inconsistent with the statute.

For the reasons stated in *Allen Oil*, and those additional reasons expressed by Judge Smith in his dissent in *Vogel Fertilizer*, I respectfully dissent.

five or fewer individuals described in such subsection of stock possessing–
   (A) at least 80 percent . . . of each corporation, and
   (B) more than 50 percent . . . of each corporation, taking into account the stock ownership of each such individual only to the extent such stock ownership is identical with respect to each such corporation.

**11.** According to one commentator, the legislative history of § 1551(b)(2) unequivocally requires common ownership for the 80% test, which the regulations, when construed as a whole, also so require. Bonovitz, 28 Tax Lawyer at 522–31. See also Weisman, 1978 Taxes at 481.