# UNITED STATES *v.* VOGEL FERTILIZER CO.

No. 80–1251. Argued November 3, 1981—Decided January 13, 1982

BRENNAN, J., delivered the opinion of the Court, in which BURGER, C. J., and MARSHALL, POWELL, REHNQUIST, STEVENS, and O'CONNOR, JJ., joined. BLACKMUN, J., filed a dissenting opinion, in which WHITE, J., joined, *post*, p. 35.

*Stuart A. Smith* argued the cause for the United States. With him on the briefs were *Solicitor General Lee*, former *Solicitor General McCree*, *Acting Assistant Attorney General Murray*, *Ernest J. Brown*, and *William A. Friedlander*.

*Ronald C. Jensen* argued the cause and filed a brief for respondent.*

---

*Briefs of *amici curiae* urging affirmance were filed by *David Elliot Weisman* and *W. G. Dinning, Jr.*, for Dixie Realty Co., Inc., et al.; and by *Michael A. Williams* for the Minnequa Bank of Pueblo et al.

JUSTICE BRENNAN delivered the opinion of the Court.

Section 1561(a) of the Internal Revenue Code of 1954, 26 U. S. C. § 1561(a), limits a "controlled group of corporations" to a single corporate surtax exemption.[1] Section 1563(a)(2) provides that a "controlled group of corporations" includes a "brother-sister controlled group," defined as "[t]wo or more corporations if 5 or fewer persons . . . own . . . stock possessing (A) at least 80 percent of the total combined voting power . . . or at least 80 percent of the total value . . . of each corporation, and (B) more than 50 percent of the total combined voting power . . . or more than 50 percent of the total value . . . of each corporation, taking into account the stock ownership of each such person only to the extent such stock ownership is identical with respect to each such corporation."[2]

[1] For two of the tax years in question in this case—the years ending November 30, 1973 and 1974—the Code exempted the first $25,000 of corporate earnings from the federal surtax on corporate income, 26 U. S. C. § 11(d) (1970 ed.), and for the third year—ending November 30, 1975—the Code exempted the first $50,000. 26 U. S. C. § 11(d). For each of these tax years, however, § 1561 of the Code limited the members of a "controlled group" of corporations to a single shared surtax exemption. Amendments to the Code in 1978 replaced the surtax exemption with a graduated five-step tax rate structure on taxable corporate income. 26 U. S. C. § 11 (1976 ed., Supp. III). Now members of a controlled group must share a single rate schedule. 26 U. S. C. § 1561(a) (1976 ed., and Supp. III).

[2] The full text of § 1563(a)(2) is:

"Brother-sister controlled group

"Two or more corporations if 5 or fewer persons who are individuals, estates, or trusts own (within the meaning of subsection (d)(2)) stock possessing—

"(A) at least 80 percent of the total combined voting power of all classes of stock entitled to vote or at least 80 percent of the total value of shares of all classes of the stock of each corporation, and

"(B) more than 50 percent of the total combined voting power of all classes of stock entitled to vote or more than 50 percent of the total value of shares of all classes of stock of each corporation, taking into account the stock ownership of each such person only to the extent such stock ownership is identical with respect to each such corporation."

The interpretation of the statutory provision by Treas. Reg. § 1.1563–1(a)(3), 26 CFR § 1.1563–1(a)(3) (1981), is that the "term 'brother-sister controlled group' means two or more corporations if the same five or fewer persons . . . own . . . *singly or in combination*" the two prescribed percentages of voting power or total value.[3] The question presented is whether the regulatory interpretation—that the statutory definition is met by the ownership of the prescribed stock by five or fewer persons "singly or in combination"—is a reasonable implementation of the statute or whether Congress intended the statute to apply only where each person whose stock is taken into account owns stock in each corporation of the group.

## I

Respondent Vogel Fertilizer Co. (Vogel Fertilizer), an Iowa corporation, sells farm fertilizer products. During the tax years in question—1973, 1974, and 1975—Vogel Fertil-

---

[3] The full text of the Treasury Regulation is:

"*Brother-sister controlled group.*

"(i) The term 'brother-sister controlled group' means two or more corporations if the same five or fewer persons who are individuals, estates, or trusts own (directly and with the application of the rules contained in paragraph (b) of § 1.1563–3), singly or in combination, stock possessing—

"*(a)* At least 80 percent of the total combined voting power of all classes of stock entitled to vote or at least 80 percent of the total value of shares of all classes of the stock in each corporation; and

"*(b)* More than 50 percent of the total combined voting power of all classes of stock entitled to vote or more than 50 percent of the total value of shares of all classes of stock of each corporation, taking into account the stock ownership of each such person only to the extent such stock ownership is identical with respect to each such corporation.

"(ii) The principles of this subparagraph may be illustrated by the following examples:

"*Example (1).* The outstanding stock of corporations P, Q, R, S, and T, which have only one class of stock outstanding, is owned by the following unrelated individuals:

izer had only common stock issued and outstanding and Arthur Vogel (Vogel) owned 77.49 percent of that stock. Richard Crain (Crain), who is unrelated to Arthur Vogel, owned the remaining 22.51 percent. Vogel Popcorn Co. (Vogel Popcorn), another Iowa corporation, sells popcorn in both

| Individuals | Corporations | | | | | Identical ownership |
|---|---|---|---|---|---|---|
| | P | Q | R | S | T | |
| A | 60% | 60% | 60% | 60% | 100% | 60% |
| B | 40% | | | | | |
| C | | 40% | | | | |
| D | | | 40% | | | |
| E | | | | 40% | | |
| Total | 100% | 100% | 100% | 100% | 100% | 60% |

Corporations P, Q, R, S, and T are members of a brother-sister controlled group.

"*Example (2)*. The outstanding stock of corporations U and V, which have only one class of stock outstanding, is owned by the following unrelated individuals:

| Individuals | Corporations | | Identical ownership |
|---|---|---|---|
| | U | V | |
| F | 5% | | |
| G | 10% | | |
| H | 10% | | |
| I | 20% | | |
| J | 55% | 55% | 55% |
| K | | 10% | |
| L | | 10% | |
| M | | 10% | |
| N | | 10% | |
| O | | 5% | |
| Total | 100% | 100% | 55% |

Corporations U and V are not members of a brother-sister controlled group because at least 80 percent of the stock of each corporation is not owned by the same five or fewer persons."

the wholesale and retail markets. For the tax years in question Crain owned no stock in Vogel Popcorn. Vogel, however, held 87.5 percent of the voting power, and between 90.66 percent and 93.42 percent of the value of Vogel Popcorn's stock.[4]

Vogel Fertilizer did not claim a full surtax exemption on its tax returns for the years in question,[5] believing that Treas. Reg. § 1.1563–1(a)(3) barred such a claim. But when the United States Tax Court, in 1976, held that Treas. Reg. § 1.1563–1(a)(3) was invalid because the statute did not permit the Commissioner to take a person's stock ownership into account for purposes of the 80-percent requirement unless that person owned stock in each corporation within the brother-sister controlled group, *Fairfax Auto Parts of Northern Virginia, Inc.* v. *Commissioner*, 65 T. C. 798 (1976), rev'd, 548 F. 2d 501 (CA4 1977), Vogel Fertilizer filed timely claims for refunds, asserting that Vogel Fertilizer and Vogel Popcorn were not members of a controlled group and that Vogel Fertilizer was therefore entitled to a full surtax exemption for each taxable year. The Internal Revenue Service disallowed the claims and respondent brought this suit for a refund in the United States Court of Claims. The Court of Claims held that Vogel Fertilizer and Vogel Popcorn did not

---

[4] The remainder of the Vogel Popcorn stock—voting preferred stock— was owned by Vogel as trustee of the Alex Vogel Family Trust. Under the attribution rules of 26 U. S. C. §§ 1563(d)(2), (e), Vogel is not deemed to own this stock for tax purposes. See 225 Ct. Cl. 15, 18, 634 F. 2d 497, 499 (1980).

[5] In the original version of §§ 1561–1563, controlled groups retained the option of taking multiple surtax exemptions and paying a penalty. See 26 U. S. C. § 1562 (1964 ed.). During the tax years in question this option was being gradually phased out. 26 U. S. C. § 1564. For 1973 and 1974 respondent utilized the multiple surtax exemption under 26 U. S. C. § 1564(a), and paid the penalty imposed by § 1562(b) (1970 ed.). For the tax year ending November 30, 1975, respondent elected to allocate entirely to Vogel Popcorn the single surtax exemption then allowed to members of a controlled group of corporations.

constitute a brother-sister controlled group within the meaning of § 1563(a)(2)(A); that Treas. Reg. § 1.1563–1(a)(3) is invalid to the extent that it takes into account, with respect to the 80-percent requirement, stock held by a shareholder who owns stock in only one corporation of the controlled group; and that respondent was, accordingly, entitled to a refund. 225 Ct. Cl. 15, 634 F. 2d 497 (1980). We granted certiorari to resolve a conflict among the Circuits on this issue, 450 U. S. 994 (1981),[6] and now affirm.

## II

Vogel's ownership of more than 50 percent of both Vogel Fertilizer and Vogel Popcorn satisfies Part (B) of the statutory test—the 50-percent identical-ownership requirement. The controversy centers on Part (A) of the test—the 80-percent requirement.

Respondent argues that the statute must be construed as including a common-ownership requirement—Congress was attempting to identify interrelated corporations that are in reality subdivided portions of a larger entity. In the taxpayer's view, Congress thus did not intend that a person's stock ownership be taken into account for purposes of the 80-percent requirement unless that shareholder owned stock in *all*

---

[6] The Court of Appeals for the Fifth Circuit is in agreement with the Court of Claims and the Tax Court that Treas. Reg. § 1.1563–1(a)(3), 26 CFR § 1.1563–1(a)(3) (1981), is invalid insofar as it permits the 80-percent requirement to be satisfied without common ownership. *Delta Metalforming Co.* v. *Commissioner*, 632 F. 2d 442 (1980). The Tax Court has adhered to its view that the Regulation is invalid. See, *e. g., Charles Baloian Co.* v. *Commissioner*, 68 T. C. 620, 629–631 (1977); *Davidson Chevrolet Co.* v. *Commissioner*, 39 TCM 299 (1979), [¶ 79,414] P-H Memo TC; *Allen Oil Co.* v. *Commissioner*, 38 TCM 355 (1979), [¶ 79,088] P-H Memo TC; *Delta Metalforming Co.* v. *Commissioner*, 37 TCM 1485 (1978), [¶ 78,354] P-H Memo TC; *T. L. Hunt, Inc.* v. *Commissioner*, 35 TCM 966 (1976), [¶ 76,221] P-H Memo TC. This adherence has persisted in the face of reversals by the Courts of Appeals for the Second, Fourth, and Eighth Circuits. *Allen Oil Co.* v. *Commissioner*, 614 F. 2d 336 (CA2 1980); *Fairfax Auto Parts of Northern Virginia* v. *Commissioner*, 548 F. 2d 501 (CA4 1977) *(per curiam); T. L. Hunt, Inc.* v. *Commissioner*, 562 F. 2d 532 (CA8 1977).

of the corporations within the controlled group. The same "5 or fewer" individuals cannot be said to control 80 percent of both Vogel Fertilizer and Vogel Popcorn because Crain owns no stock in Vogel Popcorn and therefore his 22.51 percent of Vogel Fertilizer cannot be added to Vogel's 77.49 percent of that corporation to satisfy § 1563(a)(2)(A). The Commissioner takes the position, however, reflected in his addition of the words "singly or in combination" in Treas. Reg. § 1.1563–1(a)(3) to the statutory language, that there is no common-ownership requirement—various subgroups of "5 or fewer persons" can own the requisite 80 percent of the different corporations within the controlled group. The Commissioner acknowledges that under this interpretation, Part (A)'s 80-percent requirement in no respect measures the interrelationship between two corporations. The Commissioner's view is that only the 50-percent requirement measures this interrelationship. He contends the 80-percent requirement "continues to have independent significance" in that it "insures that all the members of the corporate group will be closely held," so that "the more-than-50-percent shareholder control group can obtain additional control in those instances where a greater interest is needed without the necessity of dealing with a large number of other shareholders." Brief for United States 35.[7]

---

[7] The difference between the Commissioner's and the taxpayer's positions is illustrated by the following example:

| Indi-viduals | Corporations | | | | | Identical ownership |
|---|---|---|---|---|---|---|
| | U | V | W | X | Y | |
| A | 55% | 51% | 55% | 55% | 55% | 51% |
| B | 45% | 49% | | | | (45% in U & V) |
| C | | | 45% | | | |
| D | | | | 45% | | |
| E | | | | | 45% | |

### A

Our role is limited to determining the validity of Treas. Reg. § 1.1563–1(a)(3). Deference is ordinarily owing to the agency construction if we can conclude that the regulation "implement[s] the congressional mandate in some reasonable manner." *United States* v. *Correll*, 389 U.S 299, 307 (1967). But this general principle of deference, while fundamental, only sets "the framework for judicial analysis; it does not displace it." *United States* v. *Cartwright*, 411 U. S. 546, 550 (1973).

The framework for analysis is refined by consideration of the source of the authority to promulgate the regulation at issue. The Commissioner has promulgated Treas. Reg. § 1.1563–1(a)(3) interpreting this statute only under his general authority to "prescribe all needful rules and regulations." 26 U. S. C. § 7805(a). Accordingly, "we owe the interpretation less deference than a regulation issued under a specific grant of authority to define a statutory term or prescribe a method of executing a statutory provision." *Rowan Cos.* v. *United States*, 452 U. S. 247, 253 (1981). In addition, Treas. Reg. § 1.1563–1(a)(3) purports to do no more than add a clarifying gloss on a term—"brother-sister controlled group"— that has already been defined with considerable specificity by Congress. The Commissioner's authority is consequently more circumscribed than would be the case if Congress had used a term "'so general . . . as to render an interpretive regulation appropriate.'" *National Muffler Dealers Assn.*,

---

The parties would agree that the 50-percent identical-ownership requirement in Part (B) is met for all corporations by shareholder A's identical ownership of 51 percent of all of the corporations. The Commissioner would find the 80-percent requirement met as well, and would therefore define all five corporations as part of a controlled group, because various subgroups of the five or fewer shareholders can account for 80 percent of each corporation. The taxpayer's position is that only corporations U and V are part of a brother-sister controlled group, because they are the only two corporations in which precisely the same five or fewer persons account for 80 percent of the stock of the putative "brother-sister controlled" corporations.

*Inc.* v. *United States*, 440 U. S. 472, 476 (1979), quoting *Helvering* v. *R. J. Reynolds Co.*, 306 U. S. 110, 114 (1939). See also *Rowan Cos.* v. *United States*, *supra*.

## B

We consider first whether the Regulation harmonizes with the statutory language. *National Muffler Dealers Assn., Inc.* v. *United States*, *supra*, at 477. That language, set forth *supra*, at 18, and n. 2, while not completely unambiguous, is in closer harmony with the taxpayer's interpretation than with the Commissioner's Regulation. The term that the statute defines—"brother-sister controlled group"—connotes a close horizontal relationship *between* two or more corporations, suggesting that the same indivisible group of five or fewer persons must represent 80 percent of the ownership of each corporation.

This interpretation is strengthened by the structure of the statute. Section 1563(a)(2) defines the controlling group of shareholders ("5 or fewer"), and then sets forth the two ownership requirements (80 percent and 50 percent). This structure suggests that precisely the same shareholders must satisfy both the 80-percent and 50-percent requirements. As the Tax Court stated it, "5 or fewer persons" is the "conjunctive subject" of *both* requirements. *Fairfax Auto Parts of Northern Virginia, Inc.* v. *Commissioner*, 65 T. C., at 803. Since under Part (B)'s 50-percent requirement, stock ownership is taken into account only to the extent it is "identical," that part of the statutory test clearly includes a common-ownership requirement. If, as the statutory structure suggests, the shareholders whose holdings are considered for purposes of Part (A) must be precisely the same shareholders as those whose holdings are considered for purposes of Part (B), the former also requires common ownership.[8]

---

[8] This interpretation of the statutory language is also strengthened by the presence of the phrase "each such person" in Part (B). The Tax Court pointed out:

"The words 'each such person' appearing therein refer to the 'five or fewer

Of course, a Treasury Regulation is not invalid simply because the statutory language will support a contrary interpretation. But the mere fact that there are no words in Part (A) explicitly requiring that each shareholder own stock in each corporation does not mean that the Regulation's interpretation, "singly or in combination," must be accepted as reasonable. This Court has firmly rejected the suggestion that a regulation is to be sustained simply because it is not "technically inconsistent" with the statutory language, when that regulation is fundamentally at odds with the manifest congressional design. *United States* v. *Cartwright, supra,* at 557. The challenged Regulation is not a reasonable statutory interpretation unless it harmonizes with the statute's "origin and purpose." *National Muffler Dealers Assn., Inc.* v. *United States, supra,* at 477.

### C

The legislative history of § 1563(a)(2) resolves any ambiguity in the statutory language and makes it plain that Treas. Reg. § 1.1563–1(a)(3) is not a reasonable statutory interpretation. Through the controlled-group test, Congress intended to curb the abuse of multiple incorporation—large organizations subdividing into smaller corporations and receiving un-

---

persons' constituting the ownership group for purposes of both the 80-percent and 50-percent tests. The import of such usage is that each person—and not just some of the persons—counted for purposes of the 80-percent test must be also counted for purposes of the 50-percent test." *Fairfax Auto Parts of Northern Virginia, Inc.* v. *Commissioner,* 65 T. C., at 803.

The Government argues that there is no justification for singling out the phrase "each such person" in Part (B) of the test and transporting it for application in the context of Part (A). This argument, however, mischaracterizes the reasoning of the Tax Court. The court merely intended to show that the term "each such person" refers back to the antecedent "5 or fewer persons," which precedes the 80-percent requirement, thereby strengthening the suggestion that there is one fixed, indivisible group of shareholders whose holdings are to be considered throughout application of both the 80-percent requirement in Part (A) and the 50-percent requirement in Part (B).

intended tax benefits from the multiple use of surtax exemptions, accumulated earnings credits, and various other tax provisions designed to aid small businesses. S. Rep. No. 91–552, p. 134 (1969). The House Ways and Means Committee Report noted: "[L]arge organizations have been able to obtain substantial benefits . . . by dividing the organization's income among a number of related corporations. Your committee does not believe that large organizations which operate through multiple corporations should be allowed to receive the substantial and unintended tax benefits resulting from the multiple use of the surtax exemption and the other provisions of present law." H. R. Rep. No. 91–413, pt. 1, p. 98 (1969). The intended targets of § 1563(a)(2) were groups of *interrelated* corporations—corporations characterized by *common* control and ownership. Although the 50-percent requirement measures, to a lesser degree, the overlap between two corporations, the history of the enactment of § 1563(a)(2) illustrates that Congress intended that the *80-percent* requirement be the primary requirement for defining the interrelationship between two or more corporations.

Until 1964, the method prescribed by the Code to curb the abuse of multiple incorporation was subjective: Multiple exemptions or benefits were allowed or disallowed depending on the reasons for the taxpayer's actions.[9] The Revenue Act of 1964 changed this approach, adding §§ 1561–1563 to the Code. Pub. L. 88–272, § 235(a), 78 Stat. 116–125. These sections prescribed the application of mechanical, objective

---

[9] Before 1964, the Code provisions designed to prevent taxpayers from using the multiple form of corporate organization in order to avoid taxes were §§ 269, 482, and 1551. H. R. Rep. No. 749, 88th Cong., 1st Sess., 117 (1963). Section 269 gives the Secretary the authority to disallow a tax deduction, credit, or other allowance when an acquisition was made to avoid income tax. Section 482 gives the Secretary the authority to allocate income, deductions, credits, or allowances between or among taxpayers if he determines that such an allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of the taxpayers. Section 1551 permits the Secretary to disallow a surtax exemption or accumulated

tests for determining whether two corporations were a "controlled group" and thereby restricted to one surtax exemption. The original, 1964, definition of a "brother-sister controlled group" was:

> "Two or more corporations if stock possessing at least 80 percent of the total combined voting power of all classes of stock entitled to vote or at least 80 percent of the total value of shares of all classes of stock of each of the corporations is owned . . . by one person who is an individual, estate, or trust." 26 U. S. C. § 1563(a)(2) (1964 ed.).

Because corporations were not part of a controlled group unless the same person owned 80 percent of all corporations within the group, the 1964 provision clearly included a common-ownership requirement.

In 1969 Congress adopted the present two-part percentage test codified in § 1563(a)(2). Pub. L. 91–172, § 401(c), 83 Stat. 602. This change was proposed by the Treasury Department as part of an extensive package of tax reform proposals. See Hearings Before the House Committee on Ways and Means on the Subject of Tax Reform, 91st Cong., 1st Sess., pt. 14, pp. 5050–5478 (1969) (hereinafter Hearings). The Treasury Department proposed, *inter alia*, that the definition of a brother-sister controlled group "be broadened to include groups of corporations owned and controlled by five or fewer persons, rather than only those owned and controlled by one person," as was the case under then existing law. *Id.*, at 5166. In setting forth the "Technical Explana-

---

earnings credit when a transfer of property between two "controlled" corporations occurs, unless the taxpayer can show that the "major purpose" of the transfer was not the securing of such benefits. All of these sections are still in effect, but they are no longer the primary weapons employed against the abuse of multiple incorporation. Rather, the purely objective tests of §§ 1561–1563 have proved to be more effective. See Thomas, Brother-Sister Multiple Corporations—The Tax Reform Act of 1969 Reformed by Regulation, 28 Tax L. Rev. 65, 66–67 (1972).

tion" for this new definition of brother-sister controlled groups, the Treasury Department was most explicit that the 80-percent requirement, like the 50-percent requirement, included common ownership: "[T]he *same five* or fewer persons [must] own at least 80 percent of the voting stock or value of shares of *each* corporation and . . . *these* five or fewer individuals" must satisfy the 50-percent requirement in Part (B). *Id.*, at 5168 (emphasis added except for *"five"*).

The Treasury Department's "General Explanation" of the amendment to § 1563(a)(2) defined a brother-sister controlled group as one "in which five or fewer persons own, to a large extent in identical proportions, at least 80 percent of the stock of each of the corporations." Hearings, at 5394 (footnote omitted). The General Explanation then set forth the respective roles of the expanded 80-percent requirement and the new 50-percent requirement:

"This provision expands present law by considering the combined stock ownership of five individuals, rather than one individual, in applying the 80-percent test. . . .

"However, in order to insure that this expanded definition of brother-sister controlled group applies only to those cases where the five or fewer individuals hold their 80 percent in a way which allows them to operate the corporations as one economic entity, the proposal would add an additional rule that the ownership of the five or fewer individuals must constitute more than 50 percent of the stock of each corporation considering, in this test of ownership, stock of a particular person only to the extent that it is owned identically with respect to each corporation." *Ibid.*

The General Explanation made it clear that, under the 1969 amendment to § 1563(a)(2), the 80-percent requirement would remain the primary basis for determining whether two or more corporations represent the *same* financial interests. Part (A) of the 1969 test was simply an expansion of the 1964 test, which considered the two or more corporations to be a

brother-sister controlled group only when one person owned 80 percent of all of the corporations. This "expansion" was necessary to "close the present opportunity for easy avoidance" of the 80-percent test. Hearings, at 5396. Because five persons now played the role previously played by one, this expanded version of the test required a new safeguard—the 50-percent requirement—to "insure that the new expanded definition is limited to cases where the brother-sister corporations are, in fact, *controlled* by the group of stockholders as one economic enterprise." *Ibid.* (emphasis added).[10]

The "singly or in combination" provision of Treas. Reg. § 1.1563–1(a)(3) is clearly incompatible with the explanation offered by the Treasury Department when it proposed the statute. In addition to the explicit statement that the members of the controlling group must own stock in "each" corporation, the Treasury Department presented a test in which the 80-percent requirement remained the primary indicia of interrelationship. But under the challenged Regulation, the 80-percent requirement measures *only* whether or not the brother-sister corporations are closely held. The fact that a corporation is closely held, absent common ownership, is irrelevant to the congressional purpose of identifying interrelationship: "It is not the *smallness* of the number of persons in each company that triggers § 1563; it is the *sameness* of that small number." *T. L. Hunt, Inc.* v. *Commissioner*, 562 F. 2d 532, 537 (CA8 1977) (Webster, J. dissenting).[11]

___

[10] The Treasury Department's explanations included several examples applying the new definition of a brother-sister controlled group. In these examples, all shareholders whose stock was taken into account for purposes of the 80-percent requirement owned stock in each of the other corporations within the controlled group. See Hearings, at 5169, 5170, 5395–5396.

[11] The Commissioner strains to find some ambiguity in the Treasury Department's explanations. He points to the statement in the General Explanation that a brother-sister controlled group is a "group of corporations in which five or fewer persons own, *to a large extent in identical propor-*

The Treasury Department's explanations of the proposed statute are not, as the dissent in the Court of Claims suggested, a mere "admission against interest" by the Commissioner. 225 Ct. Cl., at 44, 634 F. 2d, at 514. The expanded definition of "brother-sister controlled group" was proposed by the Treasury Department and adopted in the same form in which it was presented. Of course, it is Congress' understanding of what ·it was enacting that ultimately controls. But we necessarily attach "great weight" to agency representations to Congress when the administrators "participated in drafting and directly made known their views to Congress in committee hearings." *Zuber* v. *Allen*, 396 U. S. 168, 192 (1969). The subsequent legislative history of § 1563(a)(2) confirms that Congress adopted not only the proposal of the Treasury Department, but also the Department's explana-

---

*tions*, at least 80 percent of the stock of each of the corporations." *Id.*, at 5394 (footnote omitted, emphasis added). The Commissioner contends that the italicized phrase suggests that there need not be common ownership among all those persons taken into account for purposes of the 80-percent requirement. But the words the Commissioner relies on only further support the taxpayer's position. If the shareholders own stock "to a large extent in identical proportions" they certainly own the stock *to some extent* in identical proportions—there is some overlap among *each* shareholder's holdings in *each* brother-sister corporation.

The dissent makes a similar effort, relying on the statement in the Technical Explanation that the 80-percent requirement "is satisfied if the *group* of five or more persons *as a whole* owns at least 80 percent of the voting stock or value of shares of each corporation, *regardless of the size of the individual holdings of each person.*" *Post*, at 38–39 (emphasis in opinion). This language, however, also supports the taxpayer's interpretation since it appears to assume that "each person" *has* holdings in each corporation. This assumption is demonstrated by the three examples which directly follow this language and are used to illustrate it: The 80-percent requirement "is met whether one person owns 80 percent of the voting stock of each corporation, four persons each own 20 percent of the voting stock of each corporation, or one person owns 60 percent of the voting stock of one corporation and 40 percent of another, and another person owns 40 percent of the voting stock of the first and 60 percent of the second." Hearings, at 5169.

tion and interpretation which are wholly incompatible with the "singly or in combination" interpretation of the Regulation. The Ways and Means Committee Report stated:

> "This bill expands the definition [of a brother-sister controlled group] to include two or more corporations which are owned 80 percent or more (by voting power or value) by five or fewer persons (individuals, estates, or trusts) provided that these five or fewer persons own more than 50 percent of each corporation when the stock of each person is considered only to the extent it is owned identically with respect to each corporation." H. R. Rep. No. 91–413, pt. 1, p. 99 (1969).

The House Committee Report thus reflects the Treasury Department's explanations—the 80-percent requirement is an expanded version of the 1964 statute and measures overlapping interests, while the 50-percent requirement is an additional proviso necessary in light of the expanded number of shareholders whose overlapping interests were to be considered.[12]

### D

The Commissioner's further reasons for sustaining his interpretation are unpersuasive.

The Commissioner relies on the fact that, in expanding the coverage of § 1563(a)(2), Congress expressly adopted part of the language used in § 1551(b)(2) of the Code to describe a transfer from one corporation to another "controlled" by the same "five or fewer" individuals. The Commissioner contends that Congress thereby approved the interpretation the Commissioner had placed on § 1551(b)(2). Even if we could assume that Congress was aware of Treasury Regulations in-

---

[12] The Senate Committee Reports describe the amendment in language almost identical to that employed by the House Report. See S. Rep. No. 91–552, p. 135 (1969); Senate Committee on Finance, Summary of H. R. 13270, Tax Reform Act of 1969, 91st Cong., 1st Sess., 49 (Comm. Print 1969).

terpreting § 1551, promulgated only two years before § 1563 was enacted, see 32 Fed. Reg. 3214–3216 (1967), the promulgated regulations do not support the Commissioner's present interpretation of the statutory language in § 1563(a)(2). The Regulations defining control under § 1551 contain no language similar to the words "singly or in combination" found in Treas. Reg. § 1.1563–1(a)(3) and they contain no suggestion that the Treasury Department had interpreted § 1551(b)(2) as *not* having a common-ownership requirement. See Treas. Reg. § 1.1551–1(e), 26 CFR § 1.1551–1(e) (1981).[13]

Also unpersuasive is the Commissioner's reliance on the fact that § 1563(a)(2) is referred to in § 1015 of the Employee Retirement Income Security Act of 1974, 26 U. S. C. § 414.[14]

---

[13] The Commissioner relies on one of the examples used to define a "transfer" for purposes of § 1551—a concept that obviously has no application under § 1563(a)(2). See Treas. Reg. § 1.1551–1(g)(4), 26 CFR § 1.1551–1(g)(4) (1981). The example the Commissioner relies on provides: "Individual A owns 55 percent of the stock of corporation X. Another 25 percent of corporation X's stock is owned in the aggregate by individuals B, C, D, and E. On June 15, 1963, individual A tranfers property to corporation Y (newly created for the purpose of acquiring such property) in exchange for 60 percent of the stock of Y, and B, C, and D acquire all of the remaining stock of Y. The transfer is within the scope of section 1551(a)(3)." Treas. Reg. § 1.1551–1(g)(4), Example (4), 26 CFR § 1.1551–1(g)(4), Example (4) (1981).

Even if this example were read to suggest that a transferor "controls," within the meaning of § 1551(b)(2), a transferee although the persons owning 80 percent of the transferor do not each own stock in the transferee, the example would be inapplicable to § 1563(a)(2) because, as the Tax Court has pointed out, there is no method for determining which brother-sister corporation is to be regarded as the transferor and which as the transferee. See *Fairfax Auto Parts of Northern Virginia, Inc.*, 65 T. C., at 807. See also Bonovitz, Brother-Sister Controlled Groups under Section 1563: The 80 Percent Ownership Test, 28 Tax Lawyer 511, 524, 528–530 (1975).

[14] Section 414(b) provides in relevant part that "all employees of all corporations which are members of a controlled group of corporations (within the meaning of section 1563(a), determined without regard to section 1563(a)(4) and (e)(3)(C)) shall be treated as employed by a single employer."

34

From this the Commissioner infers congressional approval of all the Regulations promulgated under § 1563(a)(2), including the Regulation at issue in this case. But it is the intent of the Congress that amended § 1563(a), not the views of the subsequent Congress that enacted § 414, that are controlling. See *Teamsters* v. *United States*, 431 U. S. 324, 354, n. 39 (1977). In any event, this passing reference in 26 U. S. C. § 414(b), enacted only two years after Treas. Reg. § 1.1563–1(a)(3) was promulgated, 37 Fed. Reg. 8068–8070 (1972), hardly constitutes legislative approval of a longstanding administrative interpretation, from which we could infer any congressional acceptance. Cf. *United States* v. *Correll*, 389 U. S., at 305–306.

Finally, the Commissioner seeks to uphold the Regulation on the ground that a common-ownership requirement leads to the assertedly nonsensical result that ownership of only one share could be determinative. For example, if Crain owned but one share of Vogel Popcorn, then the 80-percent requirement would be met and the taxpayer corporation would be part of a controlled group even under the taxpayer's interpretation of the statute. This argument is without merit, for several reasons. First, Congress purposefully substituted the mechanical formula of § 1563(a)(2) for the subjective, case-by-case analysis that had previously prevailed. Inherent in such an objective test is a sharp dividing line that is crossed by incremental changes in ownership. Moreover, it is obvious that a shareholder would not buy a small amount of stock in order to *create* a controlled group, since it is to the taxpayer's advantage not to be part of such a group. Finally, a person's "mere" ownership of one share of stock plays an important role in the operation of the test. It insures that each of the "5 or fewer" shareholders representing the bulk of the financial interest of the corporations actually knows of the other corporations within the putative brother-sister controlled group. Under this construction of the statute, controlled-group membership cannot

catch such a shareholder by surprise, as it could under the Commissioner's construction.

*Affirmed.*

JUSTICE BLACKMUN, with whom JUSTICE WHITE joins, dissenting.

I cannot deny that the Court's opinion persuasively defends a possible interpretation of 26 U. S. C. § 1563(a)(2). In my view, however, the Court has totally failed to establish that the *Commissioner's* interpretation is incorrect. Because I believe that the only certainty about the language and history of § 1563(a)(2) is that both are ambiguous, I would defer to the Commissioner's judgment.

The Court begins by declaring that the statutory language, "while not completely unambiguous, is in closer harmony with the taxpayer's interpretation than with the Commissioner's Regulation" because the term "'brother-sister controlled group'—connotes a close horizontal relationship *between* two or more corporations." *Ante*, at 25 (emphasis in original). In taking this approach, however, the Court simply assumes its conclusion. The 50-percent test of Part (B) already ensures a horizontal relationship between the corporations that constitute the controlled group; nothing in the language of the statute suggests that Part (A) was designed directly to serve the same purpose. At most, § 1563(a)(2) can be read to require that the same *set* of five or fewer persons must satisfy the 50- and 80-percent tests; the statute is entirely silent as to whether each *member* of the set must own stock in each corporation. And, unlike the Court, I have difficulty inferring this conclusion from the term "brother-sister controlled group," a phrase that appears only in the heading of the subsection and that is hardly a household term with an intuitively obvious meaning.

Similar problems attend the Court's analysis of the statute's structure. In the Court's view, the fact that the controlling group of shareholders is defined as "5 or fewer" for both the 50- and 80-percent tests "suggests that precisely the

same shareholders must satisfy both the 80-percent and 50-percent requirements." *Ante*, at 25. Even if this were true, however, it would not mean that *each member* of the set of five or fewer shareholders must own stock in each corporation; it suggests only that the total number of shareholders considered in relation to both tests may not exceed five. In any event, the common-ownership requirement—which takes "into account the stock ownership of each such person only to the extent such stock ownership is identical with respect to each such corporation," § 1563(a)(2)(B)—is embedded in Part (B), and the simpler and normal reading of the statute therefore would apply the common-ownership restriction only to Part (B)'s 50-percent test.[1] It is the Court's reading, then, that seemingly runs counter to the structure of the statute, for under its approach the 80-percent test would "tend to overlap or swallow the 50% identical ownership requirement." *Allen Oil Co.* v. *Commissioner*, 614 F. 2d 336, 339 (CA2 1980).

The confusing nature of the statutory text leads the Court to rely principally on § 1563(a)(2)'s legislative history, which it cheerfully reads as "resolv[ing] any ambiguity in the statutory language." *Ante*, at 26. It seems to me that this conclusion is substantially overstated. It is undoubtedly true, as the Court observes, that § 1563(a)(2) was aimed at curbing the abuses of multiple incorporation. But this is beside the

---

[1] The Court concludes that the phrase "each such person" in Part (B) refers back to the "5 or fewer persons," which precedes Part (A), "strengthening the suggestion that there is one fixed, indivisible group of shareholders whose holdings are to be considered throughout application of both the 80-percent requirement in Part (A) and the 50-percent requirement in Part (B)." *Ante*, at 26, n. 8. But this language proves only that the total number of shareholders considered may not exceed five; it need not be read to require that each 80-percent shareholder own stock in each corporation. Indeed, the presence of an explicit common-ownership requirement in Part (B), along with the absence of analogous language in Part (A), suggests that Congress did not intend to write such a requirement into the 80-percent test.

point, for—as the Court notes—the 50-percent test of Part (B) itself serves to "measur[e] . . . the overlap between two corporations." *Ante*, at 27. The Court's further conclusion "that Congress intended that the *80-percent* requirement be the primary requirement for defining the interrelationship between two or more corporations," *ibid.* (emphasis in original), is entirely without support in the legislative history.[2] Certainly, such a view appears nowhere in the congressional Reports. These simply echo the statutory definition, declaring that a controlled group includes "two or more corporations which are owned 80 percent or more . . . by five or fewer persons . . . provided that these five or fewer persons own more than 50 percent of each corporation when the stock of each person is considered only to the extent it is owned identically with respect to each corporation." H. R. Rep. No. 91–413, pt. 1, p. 99 (1969). Accord, S. Rep. No. 91–552, p. 135 (1969). Again, however, the legislative documents prove only that the same *set* must satisfy the 80- and 50-per-

---

[2] The Court apparently derives this conclusion from the nature of the pre-1969 statutory scheme, under which corporations were considered to be part of a controlled group only if the same person owned 80 percent of the stock in each controlled corporation. *Ante*, at 28. In the Court's view, § 1563(a)(2) simply expanded the ownership group to five, retaining the 80-percent requirement as the primary test for interrelatedness. The problem with this approach is that it is entirely speculative. Congress nowhere stated that it had any such intention with regard to the 80-percent test. And the Treasury Department, when it proposed § 1563(a)(2), simply stated the obvious: it declared that the new statute "expand[ed] present law" by considering the ownership interests of five individuals, while adding a 50-percent test "to insure" that controlled corporations operate as one economic entity. Hearings Before the House Committee on Ways and Means on the Subject of Tax Reform, 91st Cong., 1st Sess., pt. 14, p. 5394 (1969). Certainly, the Court can credibly read its conclusion into this history. But the legislative materials are not inconsistent with the Commissioner's contrary view that the newly devised 50-percent test was to serve as the primary indicium of interrelatedness. Because of the absence of any explicit statement on the question in the legislative history, I find the Court's certainty somewhat surprising.

cent tests; they cannot easily be read to require that each *member* of the set own stock in every corporation.

Ironically, then, the Court at bottom is forced to rely on the rationale advanced by the Treasury Department when it proposed the legislation eventually adopted as § 1563(a)(2). The Court's analysis of this proposal, which it explores in some detail, *ante,* at 28–30, is certainly credible. But even this legislative material contains an essential ambiguity.[3] Neither the "General Explanation" nor the "Technical" one addresses whether the 80-percent test requires common ownership, or whether a person excluded from the 50-percent calculation because he owns no stock in one of the controlled corporations may nevertheless be included in the 80-percent test, so long as the total number of relevant shareholders does not exceed five. For example, while the Treasury Department suggested that "the same *five* or fewer persons [must] own at least 80 percent of the voting stock or value of shares of each corporation" to satisfy Part (A), and that "these five or fewer individuals" must satisfy the 50-percent test of Part (B), Hearings Before the House Committee on Ways and Means on the Subject of Tax Reform, 91st Cong., 1st Sess., pt. 14, p. 5168 (1969) (emphasis in original), the Department's explanation—despite the Court's suggestion to the contrary—need not be read as requiring that *each* of the five own stock in every controlled corporation. To the contrary, the Technical Explanation declares that the 80-percent test "is satisfied if the *group* of five or fewer persons *as a whole* owns at least 80 percent of the voting stock or value of shares of each corporation, *regardless of the size of the indi-*

---

[3] Indeed, throughout the course of litigation over § 1563(a)(2), both the Commissioner and the various taxpayers involved have drawn support from precisely the same portions of the Treasury Department proposals. Compare *Fairfax Auto Parts of Northern Virginia, Inc.* v. *Commissioner,* 65 T. C. 798, 803–804 (1976), rev'd, 548 F. 2d 501 (CA4), cert. denied, 434 U. S. 904 (1977), with 65 T. C., at 809–810 (dissenting opinion). See also *Allen Oil Co.* v. *Commissioner,* 614 F. 2d 336, 340, n. 4 (CA2 1980).

*vidual holdings of each person." Id.*, at 5169 (emphasis added). This obviously suggests that the crucial inquiry is whether a given set of five satisfies both tests, not whether each individual owns stock in each corporation.

Certainly, I do not suggest that the Commissioner's interpretation is compelled by the legislative materials. But the Court, by putting so much effort into reading between the lines, has lost sight of the fact that certain statutory ambiguities cannot be neatly and finally resolved. Here, the Commissioner's interpretation is not "unreasonable or meaningless," for "it insures that the stock is closely held." *Allen Oil Co.* v. *Commissioner*, 614 F. 2d, at 340. In such a situation, "[t]he choice among reasonable interpretations is for the Commissioner, not the courts." *National Muffler Dealers Assn., Inc.* v. *United States*, 440 U. S. 472, 488 (1979). See *United States* v. *Correll*, 389 U. S. 299, 307 (1967). For that reason, I respectfully dissent.