**UNITED STATES of America**

v.

**Joseph A. NESLINE.**

**Civ. A. No. M–79–1768.**

United States District Court,
D. Maryland.

July 12, 1984.

J. Frederick Motz, U.S. Atty., D.Md., Baltimore, Md., Thomas M. Lawler, Tax Div., U.S. Dept. of Justice, Washington, D.C., for plaintiff.

Vincent J. Fuller, Kendra E. Heymann, and Williams & Connolly, Washington, D.C., Andrew Jay Graham and Kramon & Graham, P.A., Baltimore, Md., for defendant.

## MEMORANDUM AND ORDER

JAMES R. MILLER, Jr., District Judge.

The United States brought this action, pursuant to 28 U.S.C. §§ 1340, 1345 and I.R.C. § 7402, to recover taxes allegedly owed by the defendant, Joseph A. Nesline, for the tax years 1971 and 1972. The defendant has filed a motion for judgment on the pleadings,[1] Rule 12(e), Fed.R.Civ.P., and the United States has moved for summary judgment,[2] Rule 56. Having considered the parties' memoranda and the government's evidentiary materials, the court concludes that no hearing is necessary, Local Rule 6(E).

In his answer to the complaint,[3] the defendant admitted that he has not paid the taxes, interest, and penalties alleged to be due and that such are in fact owed. The defendant also admitted the timeliness of the notices of assessment and demands for payment. The only issue remaining in this case concerns whether the government's claim is barred by the statute of limitations. To resolve this issue, the court must examine the application of the suspension rule of I.R.C. § 6503(c) to the six year period of limitations set out in I.R.C. § 6502(a)(1).

The statute of limitations question presented in this case has two aspects. The first concerns the validity and the application of Treas.Reg. § 301.6503(c)–1(b) (1971) (codified at 26 C.F.R. § 301.6503(c)–1(b) (1980)). Since the court has decided that Treas.Reg. § 301.6503(c)–1(b) is invalid, the court need not consider its application to the circumstances of this case. The second aspect concerns the application of I.R.C. § 6503(c). Since the government's evidentiary showing falls short of demonstrating conclusively that the defendant was absent from the United States for a continuous period of at least six months, its motion for summary judgment will be denied. On the other hand, because the government may be able to establish at trial or in an appropriate evidentiary proceeding that the defendant was so absent from the United States, the defendant's motion will likewise be denied.

### I. Overview

The defendant filed his tax returns for the tax years 1971 and 1972 on June 26, 1972 and July 9, 1973, respectively. Both returns indicated deficiencies and the defendant was assessed for the same on the date the returns were filed. In addition, the defendant was assessed interest and penalties, I.R.C. § 6201 et seq. The complaint in this action was filed on September 21, 1979, and the defendant was ultimately served on January 22, 1980.

In the absence of a valid waiver by the taxpayer under I.R.C. § 6502(a)(2), the government must generally begin a court proceeding to collect unpaid taxes "within 6 years after the assessment of the tax," I.R.C. § 6502(a)(1). See United States v. Posner, 405 F.Supp. 934, 935–36 (D.Md. 1975). The running of the six year limitations period may be suspended, however, if one of the provisions of I.R.C. § 6503 applies. The suspension provision relied on by the government in this case is I.R.C. § 6503(c), which states:

1. Paper No. 11.

2. Paper No. 13.

3. Paper No. 9.

"Taxpayer outside United States. The running of the period of limitations on collection after assessment prescribed in section 6502 shall be suspended for the period during which the taxpayer is outside the United States *if such period of absence is for a continuous period of at least 6 months.* If the preceding sentence applies and at the time of the taxpayer's return to the United States the period of limitations on collection after assessment prescribed in section 6502 would expire before the expiration of 6 months from the date of his return, such period shall not expire before the expiration of such 6 months."

(Emphasis supplied).

The Commissioner has interpreted this provision such that a taxpayer will be deemed absent from the United States, for the purpose of I.R.C. § 6503(c), "if he is generally and substantially absent from the United States, even though he makes casual temporary visits during that period," Treas.Reg. § 301.6503(c)–1(b). In other words, although the Code requires the taxpayer's absence to be *continuous* before the limitations period will be suspended, the treasury regulation would suspend the limitations period if the taxpayer was only "generally and substantially" absent from the United States.

Relying on the defendant's passport records, customs declarations, and other evidentiary materials,[4] the government contends that it has shown that the defendant was "generally and substantially" absent from the United States from January 27, 1978 through March 26, 1979, a period of more than six months. According to the government, since there were less than six months to run on the limitations period when the defendant returned to this country in March of 1979, under I.R.C. § 6503(c) the government had six months from March 26, 1979, to begin this action. The complaint having been filed on September 21, 1979, the government claims that this suit was timely filed.

The defendant asserts that Treas.Reg. § 301.6503(c)–1(b) is invalid, as it is contrary to the plain language of I.R.C. § 6503(c) and expands the scope of that subsection's suspension rule. According to the defendant, the six year period of limitations set out in I.R.C. § 6502(a)(1) bars any collection suit for the tax years 1971 and 1972, because the government has not shown that the defendant was continuously absent from the United States for a period of at least six months so as to suspend the statute of limitations by operation of I.R.C. § 6503(c).

## II. *Discussion*

### A. *General Considerations*

As an initial matter, it is necessary to determine when this action was "commenced" for the purpose of calculating any tolling of the statute of limitations. As noted above, the complaint was filed with the court on September 21, 1979. The initial process, issued by the Clerk on that same date, was sent by the government to the defendant, by registered mail, on September 24, 1979. As of January 7, 1980, however, the government had neither received from the Postal Service the return receipt card nor had the registered letter been returned unclaimed.[5] Process was reissued on January 15, 1980, and was received by the defendant on January 22, 1980.[6]

The Supreme Court has not squarely confronted the question of whether, in a case to enforce a right created by a federal statute, the mere filing of the complaint, pursuant to Rule 3, tolls the running of the statute of limitations. *See, e.g., Walker v. Armco Steel Corp.,* 446 U.S. 740, 751 n. 11, 100 S.Ct. 1978, 1985 n. 11, 64 L.Ed.2d 659 (1980); *Ragan v. Merchants Transfer & Warehouse Co.,* 337 U.S. 530, 533, 69 S.Ct. 1233, 1234, 93 L.Ed. 1520 (1949). The low-

---

4. Paper No. 14, Exs. B, C & D.

5. Paper No. 5.

6. Paper No. 8.

er federal courts have reached differing results depending on the particular circumstances of the case. Some hold that the mere filing of the complaint is sufficient, while others require the plaintiff to exercise reasonable diligence in obtaining service or the effect of filing the complaint will be nullified. *See* cases collected in 4 C. Wright & A. Miller, *Federal Practice and Procedure* §§ 1053, 1056 (1969 & 1983 Supp.). Assuming that reasonable diligence in obtaining service is required under the Federal Rules in order to commence the action when the complaint is filed and toll the statute of limitations, the court finds that the government's efforts to serve defendant, under the circumstances of this case, were reasonable. *See generally* 10 J. Mertens, *The Law of Federal Income Taxation* § 57.82 (1976 Rev.).

■ It is settled that a taxpayer has the burden of pleading and proving the running of the statute of limitations as a bar to the collection of a properly assessed tax deficiency. *See, e.g., United States v. Gurley*, 415 F.2d 144, 147 (5th Cir.1969); 10 J. Mertens, *The Law of Federal Income Taxation* § 57.31 (1976 Rev.). The defendant included such a defense in his answer to the complaint, and the government concedes that this proceeding did not begin within six years of the assessments for the tax years at issue, I.R.C. § 6502(a)(1). Consequently, the government can maintain this action only if the six year period of limitations was suspended by the operation of I.R.C. § 6503(c).

■ The Fourth Circuit has noted, but has not decided, the issue of which party bears the burden of proving an extension of, or an exception to, the statute of limitations in a tax case. *C.I.R. v. Estate of J.B. Williams*, 216 F.2d 598, 599 (4th Cir.1954). The view which will be adopted by this court is that "[t]he burden of proving any *exception* to the running of the statute ... must be borne by the party seeking the benefit of it, in this case the Government." 10 J. Mertens, *The Law of Federal Income Taxation* § 57.92 at 178 (1976 Rev.) (footnote omitted) (emphasis in original). *See*

*United States v. Conry*, 631 F.2d 599, 600 (9th Cir.1980) (per curiam); *Yagoda v. C.I.R.*, 331 F.2d 485, 489 n. 2 (2d Cir.1964); *Murray v. United States*, 292 F.2d 602, 604 (1st Cir.1961).

### B. *Treasury Regulation § 301.6503(c)–1(b)*

■ In the usual case, courts "must defer to Treasury Regulations that 'implement the congressional mandate in some reasonable manner.'" *C.I.R. v. Portland Cement Co.*, 450 U.S. 156, 169, 101 S.Ct. 1037, 1045, 67 L.Ed.2d 140 (1981), *quoting United States v. Correll*, 389 U.S. 299, 307, 88 S.Ct. 445, 450, 19 L.Ed.2d 537 (1967). *Accord, United States v. Vogel Fertilizer Co.*, 455 U.S. 16, 24, 102 S.Ct. 821, 827, 70 L.Ed.2d 792 (1982). Such deference is particularly appropriate when Congress either fails to supply needed definitions or uses words subject to varying interpretations. *See, e.g., National Muffler Dealers Ass'n, Inc. v. United States*, 440 U.S. 472, 476–77, 99 S.Ct. 1304, 1306–07, 59 L.Ed.2d 519 (1979); *Fulman v. United States*, 434 U.S. 528, 533, 98 S.Ct. 841, 845, 55 L.Ed.2d 1 (1978); *Bingler v. Johnson*, 394 U.S. 741, 749–51, 89 S.Ct. 1439, 1444–45, 22 L.Ed.2d 695 (1969); *Correll*, 389 U.S. at 306–07, 88 S.Ct. at 449. "But this general principle of deference, while fundamental, only sets 'the framework for judicial analysis; it does not displace it.'" *Vogel Fertilizer*, 455 U.S. at 24, 102 S.Ct. at 827, *quoting United States v. Cartwright*, 411 U.S. 546, 550, 93 S.Ct. 1713, 1716, 36 L.Ed.2d 528 (1973). A prime purpose for judicial review is to assure compliance by administrative agencies with congressional policy as expressed by the language of the statute and its legislative history. *Estate of Appelbaum v. C.I.R.*, 724 F.2d 375, 381 (3d Cir. 1983).

In *National Muffler Dealer Ass'n, Inc.*, 440 U.S. at 477, 99 S.Ct. at 1307, Justice Blackmun summarized concisely the analytical framework to be employed when evaluating the validity of a treasury regulation.

"In determining whether a particular regulation carries out the congressional

mandate in a proper manner, we look to see whether the regulation harmonizes with the plain language of the statute, its origin, and its purpose. A regulation may have particular force if it is a substantially contemporaneous construction of the statute by those presumed to have been aware of congressional intent. If the regulation dates from a later period, the manner in which it evolved merits inquiry. Other relevant considerations are the length of time the regulation has been in effect, the reliance placed on it, the consistency of the Commissioner's interpretation, and the degree of scrutiny Congress has devoted to the regulation during subsequent re-enactments of the statute."

(citations omitted).

■ A lesser degree of deference may be accorded the Commissioner's interpretation when the Treasury Regulation in question [7] can be measured against the language of a specific Code provision, and the regulation was issued only under the Commissioner's general authority to "prescribe all needful rules," I.R.C. § 7805(a), as in this case, rather than under a specific grant of authority "to define a statutory term or prescribe a method of executing a statutory provision," *Rowan Companies, Inc. v. United States*, 452 U.S. 247, 253, 101 S.Ct. 2288, 2292, 68 L.Ed.2d 814 (1981). *Accord, Vogel Fertilizers*, 455 U.S. at 24, 102 S.Ct. at 827; *Appelbaum*, 724 F.2d at 381 n. 5. Finally, any degree of deference evaporates when the agency's interpretation of a statute, even if of long standing, is either unsupported by the language of the underlying statute or is inconsistent with congressional intent. *See, e.g., SEC*

*v. Sloan*, 436 U.S. 103, 111–12, 117–19, 98 S.Ct. 1702, 1708, 1711–12, 56 L.Ed.2d 148 (1978); *Max Sobel Wholesale Liquors v. C.I.R.*, 630 F.2d 670, 672 (9th Cir.1980); *Chertkof v. United States*, 676 F.2d 984, 988 (4th Cir.1982); *Moore v. Harris*, 623 F.2d 908, 910–19 (4th Cir.1980). Several considerations persuade the court that the Commissioner's interpretation of I.R.C. § 6503(c) is "clearly wrong." *See Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 381, 89 S.Ct. 1794, 1801, 23 L.Ed.2d 371 (1969).

■ The first and most important consideration is the language of the Code provision at issue. *See Southeastern Community College v. Davis*, 442 U.S. 397, 405, 99 S.Ct. 2361, 2366, 60 L.Ed.2d 980 (1979); *Greyhound Corp. v. Mt. Hood Stages*, 437 U.S. 322, 330, 98 S.Ct. 2370, 2375, 57 L.Ed.2d 239 (1978). In plain and unequivocal terms, I.R.C. § 6503(c) suspends the running of the statute of limitations only if the taxpayer is absent from the United States "for a *continuous* period of at least six months" (emphasis supplied). The Commissioner's gloss of "generally and substantially" absent expands significantly the scope of this suspension provision and hardly "harmonizes with the plain language of the statute," *Rowan Companies, Inc.*, 452 U.S. at 253, 101 S.Ct. at 2292, quoting *National Muffler Dealers Ass'n, Inc.*, 440 U.S. at 477, 99 S.Ct. at 1307. *Cf. I.N.S. v. Phinpathya*, —— U.S. ——, 104 S.Ct. 584, 78 L.Ed.2d 401 (1984) (8 U.S.C. § 1254(a)(1)'s "continuous physical presence" requirement is to be accorded the ordinary meaning of such language and does not readily admit of any exception).[8]

---

7. 36 Fed.Reg. 10782 (June 3, 1971).

8. In *Phinpathya*, 104 S.Ct. 584, the respondent, a citizen of Thailand, first entered the United States as a nonimmigrant student in October 1969. When her visa expired she chose to stay without securing permission from the immigration authorities. In 1977, during deportation proceedings, respondent applied for suspension of such proceedings pursuant to § 244(a)(1), 8 U.S.C. § 1254(a)(1). Based on respondent's testimony that she had left the United States for Thailand for three months, the immigration

judge concluded that the respondent had failed to meet § 244(a)(1)'s 7 year "continuous physical presence" requirement. After the BIA affirmed, the Court of Appeals for the Ninth Circuit reversed concluding that the respondent's absence might not be meaningfully interruptive of the seven year presence requirement and remanded for further proceedings. The Supreme Court reversed, holding that the interpretation of this statutory requirement by the Court of Appeals departed from the plain meaning of the Act.

A related consideration is that, absent persuasive evidence to the contrary, Congress is presumed to have used words in the revenue acts according to their ordinary everyday meaning. *See, e.g., Hanover Bank v. Commissioner,* 369 U.S. 672, 687, 82 S.Ct. 1080, 1088, 8 L.Ed.2d 187 (1962); *Avery v. Commissioner,* 292 U.S. 210, 214, 54 S.Ct. 674, 676, 78 L.Ed. 1216 (1934); *Matala v. Consolidation Coal Co.,* 647 F.2d 427, 429 (4th Cir.1981); *United States v. Snider,* 502 F.2d 645, 651 (4th Cir.1974). *Cf. Phinpathya,* 104 S.Ct. at 589 (and cases cited therein). An examination of the provision's legislative history not only fails to reveal such evidence, but also indicates that Congress intended the word "continuous" to be accorded its literal and customary meaning.

Prior to its amendment by the Federal Tax Lien Act of 1966, Pub.L. No. 89–719, Title I, § 106, 80 Stat. 1139, subsection (c) of I.R.C. § 6503 provided as follows:

"Location of Property Outside the United States or Removal of Property From the United States—In case collection is hindered or delayed because property of the taxpayer is situated or held outside the United States or is removed from the United States, the period of limitations on collection after assessment prescribed in Section 6502 shall be suspended for the period collection is so hindered or delayed. The total suspension of time under this subsection shall not in the aggregate exceed 6 years."

Thus, the pre-1966 Code made the suspension of the statute of limitations dependent upon the absence from the United States of the taxpayer's property, rather than the taxpayer, provided that the collection of the tax was hindered by the property's absence. According to the Senate and the House reports accompanying the 1966 amendment to I.R.C. § 6503(c), which are identical, the pre-1966 version was

"difficult to apply both because of problems in making the determination as to whether collection has been 'hindered or delayed' because property is outside of the country and also because of the factual problem in knowing when property is outside of the country and for precisely how long."

S.Rep. No. 1708, 89th Cong. 2d Sess. 1, 25, *reprinted in* [1966] U.S.Code Cong. & Ad. News 3722, 3746; H.R.Rep. No. 1884, 89th Cong. 2d Sess. 1, 23. It is apparent, therefore, that the provision was amended so as to avoid the need for making difficult factual determinations in determining the provision's applicability to a given case. *Cf. McAuley v. United States,* 525 F.2d 1108, 1112 (9th Cir.1975) (refusing to read into I.R.C. § 6503(b), with respect to bankruptcy proceedings, the difficult factual determinations Congress sought to avoid in amending I.R.C. § 6503(c)). With respect to this problem, the committees noted as follows:

"To remove these problems, the bill provides for the suspension of the period of limitations during the period of the taxpayer's absence from the country rather than that of the property. It is believed that the collection of the tax is most likely to be hindered during the period of a taxpayer's absence. However, *there are administrative problems in keeping track of short periods of time* the taxpayer may be out of the

---

The Supreme Court began by noting that the legislative purpose is expressed by the ordinary meaning of the words used, stating that the "ordinary meaning of these words does not readily admit any 'exception[s] to the requirement of seven years of 'continuous physical presence' in the United States to be eligible for suspension of deportation.' *McColvin v. INS,* 648 F.2d 935, 937 (CA4 1981)." *Phinpathya,* 104 S.Ct. at 589. The Court further noted that when Congress had intended for a continuous physical presence requirement to be flexibly administered it had provided the authority for doing so.

An omission in § 244(a)(1) of any such authority compelled the conclusion that the "continuous physical presence" requirement was to be administered as written. Moreover, the legislative history revealed that Congress was making the requirement more stringent and limiting the application of discretionary action. Accordingly, Justice O'Connor, writing for the majority, concluded that the plain meaning of the Act was to require aliens to show that they had been physically present in the United States for a continuous period of seven years.

country. *The bill meets this problem by not suspending the running of the period of limitations except when the taxpayer is continuously out of the country for 6 months or more."* S.Rep. No. 1708, 89th Cong. 2d Sess. 1, 25, *reprinted in* [1966] U.S.Code Cong. & Ad. News 3722, 3746; H.R.Rep. No. 1884, 89th Cong. 2d Sess. 1, 23 (emphasis supplied).

Despite the plain language of the statute, and the accompanying legislative history, the government urges that the interpretation contained in Treas.Reg. § 301.-6503(c)–1(b) is a reasonable attempt to implement the goal of I.R.C. § 6503(c). According to the government, Congress did recognize the administrative problems in keeping track of a taxpayer's whereabouts. Without the "generally and substantially" gloss of the treasury regulation, the government claims that it would be unable, as a practical matter, to use the suspension rule of I.R.C. § 6503(c) in its enforcement of the tax laws.

The short answer to the government's argument is that Treas.Reg. § 301.6503(c)–1(b) is contrary to the plain language of I.R.C. § 6503(c), as well as to the meaning of that provision as understood by the congressional committees. The government's administrative difficulties in taking advantage of an exception to the statute of limitations are best presented to Congress, not to this court. *See United States v. Calamaro*, 354 U.S. 351, 357, 77 S.Ct. 1138, 1142, 1 L.Ed.2d 1394 (1957).

It is true that Congress was aware in 1966 of the administrative difficulties involved in using I.R.C. § 6503(c)'s suspension rule. Nevertheless, the committee reports of both Houses of Congress make it plain that the statute of limitations would not be suspended *"except when the taxpayer is continuously out of the country for 6 months or more."* S.Rep. No. 1708, 89th Cong. 2d Sess. 1, 25, *reprinted in* [1966] U.S.Code Cong. & Ad.News 3722, 3746; H.R.Rep. No. 1884, 89th Cong. 2d Sess. 1, 23 (emphasis supplied). Conse-

quently, it cannot be said that Treas.Reg. § 301.6503(c)–1(b) "harmonizes" with what Congress understood to be the statute's purpose. *See Rowan Companies, Inc. v. United States*, 452 U.S. at 253, 101 S.Ct. at 2292.

The government's argument that Treas. Reg. § 301.6503(c) is a valid interpretation of I.R.C. § 6503(c), because Congress has not amended that statute since the regulation's issuance, is without merit. In the first place, this is not a situation where Congress has reenacted a specific Code provision subsequent to the Commissioner's interpretation. *See Fribourg Navigation Co., Inc. v. Commissioner*, 383 U.S. 272, 283, 86 S.Ct. 862, 868, 15 L.Ed.2d 751 (1966). Moreover, the court has been presented with no evidence that Congress has ever considered, much less endorsed, the interpretive gloss placed upon I.R.C. § 6503(c) by the Commissioner. *See SEC v. Sloan*, 436 U.S. at 120–21, 98 S.Ct. at 1712–13; *Zuber v. Allen*, 396 U.S. 168, 192–93, 90 S.Ct. 314, 327–28, 24 L.Ed.2d 345 (1969); *United States v. Calamaro*, 354 U.S. 351, 359, 77 S.Ct. 1138, 1143, 1 L.Ed.2d 1394 (1957); *Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 431, 75 S.Ct. 473, 476, 99 L.Ed. 483 (1955). The government also contends that, since Treas.Reg. § 301.6503(c)–1(b) is of relatively long standing, its invalidation would result in confusion in the administration of the tax law.[9] Having found the regulation to be inconsistent with the statutory mandate, the court concludes this argument to be without force. *See SEC v. Sloan*, 436 U.S. at 118–19, 98 S.Ct. at 1711–12.

Finally, the government asserts that the invalidation of Treas.Reg. § 301.6503(c) would enable taxpayers to evade the payment of taxes by periodically absenting themselves from the United States, although not for a continuous period of six months. In this regard the court notes that the defendant did file his tax returns for the tax years 1971 and 1972, and that deficiencies were assessed on June 26, 1972

---

**9.** The Treasury Regulation under consideration was not issued until 1971. Prior to that time,

the regulation mirrored the words of the statute. 36 Fed.Reg. 10782–83 (June 3, 1971).

and July 9, 1973, respectively. No evidence has been presented that the defendant attempted to evade service of process in connection with the tax years in question, and the government's own evidence shows that the defendant did not begin to travel outside of the United States until January of 1978, some five and one half years after the last assessment. The defendant has maintained a permanent residence in the United States, and apparently could have been served with process well within the six year limitations period. In sum, the government has not shown any overriding public policy considerations militating in favor of upholding its expansive interpretation of I.R.C. § 6503(c).

For the reasons set out above, the court holds that Treas.Reg. § 301.6503(c) is invalid as contrary to the underlying statute. Accordingly, the government may not rely upon it in attempting to show a suspension of the statute of limitations pursuant to I.R.C. § 6503(c).

### C. *I.R.C. § 6503(c)*

When they are viewed under the standards applicable in connection with a motion under Rule 56, *see, e.g., Marshall v. Local Lodge 1784*, 509 F.Supp. 90, 91 (D.Md.1981), it is apparent that the government's evidentiary materials fail to demonstrate conclusively that the defendant was absent from the United States for a continuous period of at least six months. Nevertheless, the government may be able to marshall sufficient evidence to convince a fact finder, by a preponderance of the evidence, that the defendant was absent from this country for the requisite period. Since the merits of the underlying tax claim have been conceded by the defendant, this issue could be resolved in an evidentiary hearing before this court.

Accordingly, it is this 12th day of July, 1984 by the United States District Court for the District of Maryland, ORDERED:

1. The government's motion for summary judgment is DENIED.

2. The defendant's motion for judgment on the pleadings is DENIED.

3. The government shall inform the court, within thirty (30) days of the date of this Memorandum and Order, whether it desires an evidentiary hearing to attempt to prove the application of I.R.C. § 6503(c) to the defendant's absence from the United States.