115 T.C. No. 41

UNITED STATES TAX COURT

AUDREY J. WALTON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3824-99.                    Filed December 22, 2000.

P established and funded with corporate stock two
substantially identical grantor retained annuity trusts
(GRAT's).  Each GRAT had a 2-year term during which P
retained the right to receive an annuity.  In the event
that P died prior to expiration of the 2-year term, the
remaining scheduled annuity payments were to be made to
her estate.  The balance of the trust property would
then be paid to the remainder beneficiaries.

<u>Held</u>:  For purposes of determining the value under
sec. 2702, I.R.C., of the gift effected upon creation
of each GRAT, P's retained qualified interest is to be
valued as an annuity for a specified term of years,
rather than as an annuity for the shorter of a term
certain or the period ending upon P's death.

<u>Held</u>, <u>further</u>, Sec. 25.2702-3(e), <u>Example</u> (<u>5</u>),
Gift Tax Regs., is an invalid interpretation of sec.
2702, I.R.C.

Richard B. Covey and Jerome J. Caulfield, for petitioner.

Carmen M. Baerga and Marie E. Small, for respondent.


OPINION


NIMS, Judge:  Respondent determined a deficiency in Federal gift tax against petitioner for 1993 in the amount of $4,532,776.82.  The sole issue for decision is the valuation under section 2702 of gifts resulting from petitioner's creation of two grantor retained annuity trusts (GRAT's).

Unless otherwise indicated, all section references are to sections of the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Background

This case was submitted fully stipulated pursuant to Rule 122, and the facts are so found.  The stipulations of the parties, with accompanying exhibits, are incorporated herein by this reference.  At the time the petition was filed in this case, petitioner resided in Versailles, Missouri.

Prior to April 7, 1993, petitioner was the sole owner of, and held in her name, 7,223,478 shares of common stock of Wal-Mart Stores, Inc., a publicly traded entity.  Then, on April 7, 1993, petitioner established two substantially identical GRAT's, each of which had a term of 2 years and was funded by a transfer

of 3,611,739 shares of the above Wal-Mart stock.  The fair market value of the Wal-Mart stock on that date was $27.6875 per share, and the consequent initial fair market value of each trust was $100,000,023.56.

According to the provisions of each GRAT, petitioner was to receive an annuity amount equal to 49.35 percent of the initial trust value for the first 12-month period of the trust term and 59.22 percent of such initial value for the second 12-month period of the trust term.  In the event that petitioner's death intervened, the annuity amounts were to be paid to her estate.  The sums were payable on December 31 of each taxable year but could be paid up through the date by which the Federal income tax return for the trust was required to be filed.  The payments were to be made from income and, to the extent income was not sufficient, from principal.  Any excess income was to be added to principal.

Upon completion of the 2-year trust term, the remaining balance was to be distributed to the designated remainder beneficiary.  Petitioner's daughter Ann Walton Kroenke was the beneficiary so named under one trust instrument; petitioner's daughter Nancy Walton Laurie was named in the other.

Each trust was irrevocable, prohibited additional contributions, specified that the grantor's interest was not subject to commutation, and mandated that no payment be made

during the trust term to any person other than the grantor or the grantor's estate. The two trustees for each respective trust were petitioner and the daughter for whose benefit the trust was created.

The following payments were made to petitioner from each of the GRAT's:

| Date of Payment | Form of Payment | Number of Shares | Value per Share | Amount of Payment |
|---|---|---|---|---|
| 7/9/93 | Cash | | | $ 117,381.52 |
| 10/4/93 | Cash | | | 117,381.52 |
| 7/15/94 | Stock | 1,434,518 | $25.1900 | 36,135,508.42 |
| 1/5/94 | Cash | | | 117,381.52 |
| 4/14/94 | Cash | | | 153,498.91 |
| 7/3/94 | Cash | | | 153,498.91 |
| 10/3/94 | Cash | | | 92,531.89 |
| 6/26/95 | Stock | 2,142,517 | 26.1875 | 56,107,163.94 |
| 1/5/95 | Cash | | | 92,531.89 |
| 4/14/95 | Cash | | | 108,861.05 |
| 6/26/95 | Stock | 34,704 | 26.1875 | 908,811.00 |
| | | 3,611,739 | | 94,104,550.57 |

The assets of each GRAT were exhausted upon the final payment of stock in June of 1995, as all income and principal had been distributed to petitioner pursuant to the scheduled annuity payments. Since the aggregate amount of annuity payments called for by each trust instrument was $108,570,025.58 (49.35 percent x $100,000,023.56 + 59.22 percent x $100,000,023.56), each GRAT

resulted in a $14,465,475.01 shortfall in annuity payments to the grantor and left no property to be delivered to the remainder beneficiary.

Petitioner timely filed a United States Gift (and Generation-Skipping Transfer) Tax Return, Form 709, for the taxable year 1993. Therein, petitioner valued at zero the gifts to her daughters of remainder interests in the GRAT's. Petitioner represented that the value of her retained interests in the GRAT's equaled 100 percent of the value of the Wal-Mart stock on the date of the transfer, thus eliminating any taxable gift to the remaindermen. Respondent subsequently issued a notice of deficiency determining that petitioner had understated the value of the gifts resulting from her establishment of the two GRAT's. Petitioner now concedes on brief that the gift occasioned by each GRAT should be valued at $6,195.10, while respondent asserts that the taxable value of each gift by petitioner is $3,821,522.12.

Discussion

I. General Rules

Section 2501 imposes a tax for each calendar year on the transfer of property by gift by any taxpayer. Pursuant to section 2512, the value of the transferred property as of the date of the gift "shall be considered the amount of the gift". Generally, where property is transferred in trust but the donor

retains an interest in such property, the value of the gift is the value of the property transferred, less the value of the donor's retained interest. See sec. 25.2512-5A(e), Gift Tax Regs.; sec. 25.2512-5T(d)(2), Temporary Gift Tax Regs., 64 Fed. Reg. 23224 (Apr. 30, 1999). However, if the gift in trust is to a family member (as defined in section 2704(c)(2)), the value of the gift is determined subject to the limitations of section 2702. See id.

As pertinent herein, section 2702 provides:

SEC. 2702. SPECIAL VALUATION RULES IN CASE OF TRANSFERS OF INTERESTS IN TRUSTS.

(a) Valuation Rules.--

(1) In general.--Solely for purposes of determining whether a transfer of an interest in trust to (or for the benefit of) a member of the transferor's family is a gift (and the value of such transfer), the value of any interest in such trust retained by the transferor or any applicable family member * * * shall be determined as provided in paragraph (2).

(2) Valuation of retained interests.--

(A) In general.--The value of any retained interest which is not a qualified interest shall be treated as being zero.

(B) Valuation of qualified interest.-- The value of any retained interest which is a qualified interest shall be determined under section 7520 [providing for use of valuation tables prescribed by the Secretary for annuities, life interests, etc.].

* * * * * * *

(b) Qualified Interest.--For purposes of this section, the term "qualified interest" means--

(1) any interest which consists of the right to receive fixed amounts payable not less frequently than annually,

(2) any interest which consists of the right to receive amounts which are payable not less frequently than annually and are a fixed percentage of the fair market value of the property in the trust (determined annually), and

(3) any noncontingent remainder interest if all of the other interests in the trust consist of interests described in paragraph (1) or (2).

Regulations promulgated under section 2702 define, and expand upon, certain of the terms employed in section 2702. "Retained" denotes "held by the same individual both before and after the transfer in trust." Sec. 25.2702-2(a)(3), Gift Tax Regs. The statutory definition of "qualified interest" is likewise elucidated in the following manner: "Qualified interest means a qualified annuity interest, a qualified unitrust interest, or a qualified remainder interest." Sec. 25.2702-2(a)(5), Gift Tax Regs. A "qualified annuity interest", in turn, is "an interest that meets all the requirements of § 25.2702-3(b) and (d)." Sec. 25.2702-2(a)(6), Gift Tax Regs.

The above-referenced paragraph (b) of section 25.2702-3, Gift Tax Regs., requires that a "qualified annuity interest" consist of "an irrevocable right to receive a fixed amount", "payable to (or for the benefit of) the holder of the annuity

interest for each taxable year of the term." Sec. 25.2702-3(b)(1)(i), Gift Tax Regs. In this context, a "fixed amount" is either a stated dollar amount or a fixed fraction or percentage (not to exceed 120 percent of the fixed fraction or percentage payable in the preceding year) of the initial fair market value of the property transferred to the trust as finally determined for Federal tax purposes. Sec. 25.2702-3(b)(1)(ii), Gift Tax Regs. In either case, the fixed amount must be payable periodically but not less frequently than annually. See id.

Paragraph (d) of section 25.2702-3, Gift Tax Regs., then adds the following requirement dealing with the term of the annuity interest: "The governing instrument must fix the term of the annuity or unitrust interest. The term must be for the life of the term holder, for a specified term of years, or for the shorter (but not the longer) of those periods." Sec. 25.2702-3(d)(3), Gift Tax Regs. Furthermore, the trust instrument must also prohibit distributions from the trust to or for the benefit of any person other than the holder of the qualified annuity interest during the term of the qualified interest. See sec. 25.2702-3(d)(2), Gift Tax Regs.

## II. Contentions of the Parties

Respondent contends that in establishing each GRAT, petitioner created three separate and distinct interests: (1) The annuity payable to her during her lifetime, (2) the

"contingent" interest of her estate to receive the annuity payments in the event of her death prior to expiration of the 2-year trust term, and (3) the remainder interest granted to her daughter. Of these three, it is respondent's position that only the first interest, but not the second, constitutes a qualified retained interest within the meaning of section 2702 and the regulations promulgated thereunder. Respondent particularly relies upon section 25.2702-3(e), Example (5), Gift Tax Regs. (hereinafter Example 5), as a valid interpretation of the statute and as governing the issues involved in this case.

Hence, according to respondent, only the value of an annuity payable for the shorter of 2 years or the period ending upon petitioner's death may be subtracted from the fair market value of the stock in calculating the value of the taxable gift made by reason of petitioner's establishment of the GRAT's. Respondent concludes that the present value of the retained qualified interest in each GRAT was $96,178,501.88 and the taxable gift $3,821,522.12 (consisting of the estate's contingent interest of $2,938,000.00 and the remainder interest of $883,522.12).

Conversely, petitioner maintains that for valuation purposes under section 2702, each GRAT is properly characterized as creating only two separate interests: (1) A retained annuity payable for a fixed term of 2 years, and (2) a remainder interest in favor of her daughter. Petitioner further asserts that the

former, in its entirety, is a qualified interest within the meaning of the statute. Accordingly, it is petitioner's position that the retained interest to be subtracted in computing the amount of the taxable gift occasioned by each GRAT is to be valued as a simple 2-year term annuity, without regard to any mortality factor. Using this method, petitioner calculates the retained annuity as having a value of $99,993,828.90, such that each GRAT effected a gift of $6,195.10.

To the extent that Example 5 would appear to suggest otherwise, petitioner avers that the example is an invalid and unreasonable interpretation of section 2702. Petitioner argues that the example is unsupported by statutory language or legislative history and is inconsistent with other regulations and examples, especially section 25.2702-3(d)(3), Gift Tax Regs. In the alternative, petitioner claims that even if Example 5 is a permissible interpretation of the statute on substantive grounds, it is procedurally invalid as issued in violation of the notice and comment provisions of the Administrative Procedures Act, 5 U.S.C. sec. 553 (1994).

III. Application

As pertinent here, section 2702 provides a facially simple formula for valuation: (Value of property transferred in trust) - (value of any qualified interest retained by the grantor) = value of gift. Applying this formula, however, requires

resolution of potentially complex subsidiary issues.  For instance, in order to determine the amount that may be subtracted, the following are among the questions that must be addressed:  The nature of the interest "retained" by the grantor, the extent to which that interest is "qualified", and the actuarial value of the qualified interest.

A.  The Nature of the Interest Retained

Commencing with the threshold inquiry of what interest or interests petitioner "retained", we conclude that, even if we were to view the GRAT indentures as creating separate interests in favor of petitioner and petitioner's estate, both such interests must be construed as retained by petitioner.  It is axiomatic that an individual cannot make a gift to himself or to his or her own estate.  An attempt to do so has long been treated at common law as a retention by the individual of the interest purportedly transferred.  For example, 1 Restatement, Trusts 2d, section 127 comment b (1959), states:

> Where the owner of property, whether real or personal, transfers it in trust to pay the income to himself for a period of years and at the expiration of the period to pay the principal to him, he is the sole beneficiary of the trust.  He is likewise the sole beneficiary where he transfers property in trust to pay the income to himself for life and on his death to pay the principal to his estate, or to his personal representatives. * * *

Hence, because petitioner could not as a matter of law give an interest in property to her estate, she by default retained all

interests in the 2-year term annuities set forth in the trust documents. Such interests thus were, as required by the regulations, "held by the same individual both before and after the transfer in trust." Sec. 25.2702-2(a)(3), Gift Tax Regs.

B. The Extent of the Qualified Interest

Having therefore decided that petitioner, either individually or through her estate, retained the 2-year annuities in their entirety, we next consider the extent to which these interests are "qualified". In this connection, section 2702 itself provides only that "qualified interest" means "any interest which consists of the right to receive fixed amounts payable not less frequently than annually". Sec. 2702(b)(1). Since a simple 2-year annuity would appear to fall within this definition, we turn to whether relevant regulations set forth additional restrictions.

The regulatory provision which enumerates the permissible terms for a qualified annuity mandates that the term be "for the life of the term holder, for a specified term of years, or for the shorter (but not the longer) of those periods." Sec. 25.2702-3(d)(3), Gift Tax Regs. Petitioner thus contends that her 2-year annuities are sanctioned by the second of these three options and may be valued as such. Respondent, however, asserts that petitioner's annuities are in fact of the third listed type

and cites Example 5 and section 25.2702-3(e), Example (1), Gift

Tax Regs., among others, in support of this position.  Example 5

states as follows:

> A transfers property to an irrevocable trust, retaining
> the right to receive 5 percent of the net fair market
> value of the trust property, valued annually, for 10
> years.  If A dies within the 10-year term, the unitrust
> amount is to be paid to A's estate for the balance of
> the term.  A's interest is a qualified unitrust
> interest to the extent of the right to receive the
> unitrust payment for 10 years or until A's prior death.

Section 25.2702-3(e), Example (1), Gift Tax Regs., provides:

> A transfers property to an irrevocable trust, retaining
> the right to receive the greater of $10,000 or the
> trust income in each year for a term of 10 years.  Upon
> expiration of the 10-year term, the trust is to
> terminate and the entire trust corpus is to be paid to
> A's child, provided that if A dies within the 10-year
> term the trust corpus is to be paid to A's estate.  A's
> annual payment right is a qualified annuity interest to
> the extent of the right to receive $10,000 per year for
> 10 years or until A's prior death, and is valued under
> section 7520 without regard to the right to receive any
> income in excess of $10,000 per year.  The contingent
> reversion is valued at zero.  The amount of A's gift is
> the fair market value of the property transferred to
> the trust less the value of the qualified annuity
> interest.

We agree with respondent that Example 5, if valid, would

preclude the valuation methodology for which petitioner argues.

To say that Example 5 is not on point because it involves a

unitrust rather than an annuity interest would be to rely on a

distinction without a substantive difference.  Consequently, we

are faced squarely with the question of this regulation's

validity.

The regulations at issue here are interpretative regulations promulgated under the general authority vested in the Secretary by section 7805(a). Hence, while entitled to considerable weight, they are accorded less deference than would be legislative regulations issued under a specific grant of authority to address a matter raised by the pertinent statute. See <u>Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837, 843-844 (1984) (<u>Chevron</u>); <u>United States v. Vogel Fertilizer Co.</u>, 455 U.S. 16, 24 (1982). A legislative regulation is to be upheld unless "arbitrary, capricious, or manifestly contrary to the statute." <u>Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.</u>, <u>supra</u> at 843-844.

With respect to interpretative regulations, the appropriate standard is whether the provision "'implement[s] the congressional mandate in some reasonable manner.'" <u>United States v. Vogel Fertilizer Co.</u>, <u>supra</u> at 24 (quoting <u>United States v. Correll</u>, 389 U.S. 299, 307 (1967)). In applying this test, we look to the following two-part analysis enunciated by the Supreme Court:

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its

> own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute. [Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., supra at 842-843; fn. refs. omitted.]

A challenged regulation is not considered such a permissible construction or reasonable interpretation unless it harmonizes both with the statutory language and with the statute's origin and purpose. See United States v. Vogel Fertilizer Co., supra at 25-26; National Muffler Dealers Association v. United States, 440 U.S. 472, 477 (1979) (National Muffler).

We pause to note that before the Chevron standard of review was enunciated by the Supreme Court, the traditional standard was simply "whether the regulation harmonizes with the plain language of the statute, its origin, and its purpose", as prescribed by the Supreme Court in National Muffler Dealers Association v. United States, supra at 477. As we have observed in a previous case, the opinion of the Supreme Court in Chevron failed to cite National Muffler and may have established a different formulation of the standard of review. See Central Pa. Sav. Association v. Commissioner, 104 T.C. 384, 390-391 (1995). In the case before us, we conclude that it is unnecessary to parse the semantics of the two tests to discern any substantive difference between them, because the result here would be the same under either.

Because section 2702 does not speak to the issue of the permissible term for a qualified annuity, Example 5 does not expressly contradict any statutory language. Accordingly, we focus on the statute's origin and purpose for further guidance. Section 2702 was enacted as part of the Omnibus Budget Reconciliation Act of 1990, Pub. L. 101-508, sec. 11602, 104 Stat. 1388-491. Legislative history[1] describes the aims which prompted the measure:

> the committee is concerned about the undervaluation of gifts valued pursuant to Treasury tables. Based on average rates of return and life expectancy, those tables are seldom accurate in a particular case, and therefore, may be the subject of adverse selection. Because the taxpayer decides what property to give, when to give it, and often controls the return on the property, use of Treasury tables undervalues the transferred interests in the aggregate, more often than not.
>
> Therefore, the committee determines that the valuation problems inherent in trusts and term interests in property are best addressed by valuing

---

[1] Sec. 2702 originated in the Senate version of the Omnibus Budget Reconciliation Act of 1990, Pub. L. 101-508, 104 Stat. 1388-400. See H. Conf. Rept. 101-964 (1990), 1991-2 C.B. 560, 1131-1133. The Senate bill was prepared under very limited time constraints. See 136 Cong. Rec. 30485 (1990). In order to avoid delay, the bill was brought to the floor without printing a formal report of the Senate Budget Committee. See id. In lieu thereof, the report language that had been submitted to the Budget Committee, for inclusion in its report, by the Senate Finance Committee relating to the bill's provisions within the Finance Committee's jurisdiction, including sec. 2702, was printed in the Congressional Record. See id. The text of the Senate version of sec. 2702, the subject of the report language printed in the Congressional Record, was identical in all material respects to the statute ultimately enacted. See id. at 30818.

retained interests at zero unless they take an easily
valued form--as an annuity or unitrust interest. By
doing so, the bill draws upon present law rules valuing
split interests in property for purposes of the
charitable deduction. [136 Cong. Rec. 30538-30539
(1990).]

The legislative record then goes on to explain the statute's

intended operation:

The bill requires that the value of a remainder
interest be determined by subtracting the value of the
income interest from the value of the entire property.
The bill provides that the value of an interest
retained by the transferor or an applicable family
member is zero unless such interest is a "qualified
interest". A qualified interest is (1) a right to
receive fixed amounts payable at least annually, (2) a
right to receive amounts payable at least annually
which are a fixed percentage of the trust's assets
(determined annually), or (3) a non-contingent
remainder interest if all the other interests in the
trust are qualified payments.[30] A qualified interest
generally would be valued under present law, e.g., by
reference to section 7520.

Thus, a person who makes a completed transfer of
nonresidential property in trust and retains (1) the
right to the income of the trust for a term of years
and (2) a reversionary right (or a testamentary general
power of appointment) with respect to trust corpus is
treated as making a transfer equal to the value of the
whole property. * * * In contrast, the creation of a
trust the only interests in which are an annuity for a
term of years and a noncontingent remainder interest is
valued under present law.

_____

[30] These interests are similar to those permitted in
charitable split-interest trusts under Section 664.

Id. at 30540 & n.30.

Based on these statements, it is clear that the principal

objective of section 2702 was to prevent undervaluation of gifted

interests. Moreover, the foregoing language reflects that the statute was designed primarily to restrict a donor's ability to calculate the amount of a gift by subtracting certain elements of actuarial value that would or might in fact pass to the donee. A fixed-term annuity, payable to the grantor or the grantor's estate, would therefore appear to fall within the statute's permissible parameters, as elucidated by the legislative history. Such an interest would further seem to fall within the class of easily valued rights which the final sentence in the passage above indicates Congress envisioned would not be afforded a lesser value under the new rules.

Respondent, however, characterizes the annuities at issue here as equivalent to the reversionary rights referenced by Congress as nonqualified, rather than to the fixed-term interests approved by the lawmakers. In respondent's view, the congressional concern underlying section 2702 reaches petitioner's annuities.

Respondent alleges that Congress sought to curb the then-current practice of dividing trusts into numerous interests and selectively retaining interests based on mortality, such as reversions. Respondent points out the common estate planning device of creating a trust, with a term short enough that the grantor's risk of dying during the term would be minimal, in which the grantor retained both an income interest and a

contingent reversion in the trust corpus to take effect in the event of his or her death during the term. The value of the gift to the remaindermen would then be calculated by subtracting actuarial amounts for each of these interests, despite the negligible chance that the reversion would become operative.

Respondent then goes on to frame the annuities payable to petitioner's estate as no different in substance from such reversions. Respondent's position is that both represent separate rights to receive property contingent upon the grantor's death during the trust term. Because contingent rights, not fixed or ascertainable at the creation of the trust, do not fall within any of the three forms defined as qualified in section 2702(b), respondent maintains that both are properly valued at zero. On this basis, respondent argues that Example 5 is consistent not only with the purpose of section 2702 but also with other regulations which deal with post-death interests, particularly section 25.2702-3(e), Example (1), Gift Tax Regs.

Respondent further contends that Congress' reference to a trust consisting only of a fixed-term annuity and a noncontingent remainder was describing a situation different from that of petitioner here. Respondent avers that the scenario contemplated by the lawmakers was one in which the donor transferred the lead annuity to an entity with perpetual life and retained a noncontingent remainder. According to respondent, only in that

context is it possible for a donor to create strictly an annuity for a term of years and a noncontingent remainder. Hence, it is only that kind of situation which respondent claims is sanctioned by the mention of an annuity "for a specified term of years" in section 25.2702-3(d)(3), Gift Tax Regs., with the result that there exists no inconsistency between Example 5 and such regulatory section.

In response to this latter argument, we would simply point out that the statute does not contemplate a transfer of the lead annuity to a perpetual-life entity. See secs. 2702(e), 2704(c)(2) (defining "member of the family" for purposes of bringing a transaction within the section 2702 rules). We therefore turn to respondent's broader contentions regarding Example 5's consistency with the underlying purpose of section 2702. On this issue, we conclude that the annuities here are more akin to the fixed-term interests cited with approval in the legislative history than to the reversionary interests identified as leading to undervaluation. We base our conclusions on the statutory text, on the above-quoted policy concerns, and on the comparable situation in the section 664 context (dealing with valuation of split-interest gifts to charity), to which the legislative history alludes.

With respect to the text itself, the short answer is that an annuity for a specified term of years is consistent with the section 2702(b) definition of a qualified interest; a contingent reversion is not.

As regards policy, permitting reduction to gift value for reversionary interests was resulting in arbitrary and abusive elimination of value which was intended to, and typically did, pass to the donee. Donors were subtracting the full actuarial value of a reversionary interest in the trust corpus and were not merely treating their retained interests as an annuity for a fixed term of years. Although we acknowledge that, in the case of a reversion, at least the equivalent of the term annuity's value would be payable to the grantor or the grantor's estate in all events, Congress was entitled to require that interests be cast in one of three specified forms to receive the favorable treatment afforded qualified interests. Accordingly, the Commissioner is equally justified in assigning a zero value to reversionary interests outside the scope of the statutory definition and refusing to consider whether such interests can have the practical effect of a different form of interest not chosen by the grantor. See sec. 25.2702-3(e), Example (1), Gift Tax Regs.

In contrast, there exists no rationale for refusing to take into account for valuation purposes a retained interest of which

both the form and the effect are consistent with the statute.  We further observe that respondent's attempts to equate the estate's rights here with other contingent, post-death interests are premised on the bifurcation of the estate's interest from that of petitioner.  Yet, given the historical unity between an individual and his or her estate, we believe such separation is unwarranted where the trust is drafted in the form of a specified interest retained by the grantor, with the estate designated only as the alternate payee of that precise interest.  This is the result that would obtain if the governing instrument were simply silent as to the disposition of the annuity in the event of the grantor's death during the trust term.  Additionally, any other construction would effectively eliminate the qualified term-of-years annuity, a result not contemplated by Congress.

Moreover, we note in this connection that the Commissioner has defined noncontingent for purposes of determining a qualified remainder interest as follows:  "an interest is non-contingent only if it is payable to the beneficiary or the beneficiary's estate in all events."  Sec. 25.2702-3(f)(1)(iii), Gift Tax Regs.  We are satisfied that this principle is equally applicable in the circumstances at bar.  For similar reasons, we decline respondent's invitation to treat term annuities payable to a grantor or the grantor's estate as having two separate "holders" for purposes of the regulatory requirement of section 25.2702-

3(b)(1)(i), Gift Tax Regs., that the annuity amount "be payable to (or for the benefit of) the holder of the annuity interest for each taxable year of the term."

Lastly, we observe that the legislative history indicates section 2702 was to draw upon the rules for valuing split-interest gifts to charity under section 664. Section 664 deals with charitable remainder annuity trusts and unitrusts for which a tax deduction is available. Yet under this statute, respondent apparently acknowledges that an annuity payable for a term of years to an individual or the individual's estate is valued as a fixed-term interest. Section 1.664-2(c), Income Tax Regs., provides that the present value of an annuity is to be computed in accordance with regulations promulgated under section 2031. Such regulations, in turn, contain the following example:

> Example 4. Annuity payable for a term of years. The decedent, or the decedent's estate, was entitled to receive an annuity of $10,000 a year payable in equal quarterly installments at the end of each quarter throughout a term certain. At the time of the decedent's death, the section 7520 rate was 9.8 percent. A quarterly payment had just been made prior to the decedent's death and payments were to continue for 5 more years. Under Table B in § 20.2031-7(d)(6) for the interest rate of 9.8 percent, the factor for the present value of a remainder interest due after a term of 5 years is .626597. Converting the factor to an annuity factor, as described in paragraph (d)(2)(iv)(A) of this section, the factor for the present value of an annuity for a term of 5 years is 3.8102. The adjustment factor from Table K in § 20.2031-7(d)(6) at an interest rate of 9.8 percent for quarterly annuity payments made at the end of the period is 1.0360. The present value of the annuity is, therefore, $39,473.67 ($10,000 x 3.8102 x 1.0360).

[Sec. 20.2031-7T(d)(5), Example (4), Temporary Estate Tax Regs., 64 Fed. Reg. 23214 (April 30, 1999); see also pre-1999 sec. 20.2031-7(d)(5), Example (4), Estate Tax Regs.]

It strikes us as incongruous that respondent is willing to recognize the full value of a term annuity, whether payable to a taxpayer or to the taxpayer's estate, when to do so will reduce the amount of a charitable deduction, but refutes this approach when it will decrease the amount of a taxable gift.

Thus, given the above authorities, we construe each of the subject GRAT's as creating a single, noncontingent annuity interest payable for a specified term of years to the undifferentiated unit of petitioner or her estate. We further conclude that Congress meant to allow individuals to retain qualified annuity interests for a specified term of years, and that the proper method for doing so is to make the balance of any payments due after the grantor's death payable to the grantor's estate. We hold that Example 5 is an unreasonable interpretation

and an invalid extension of section 2702[2], and we need not reach the issue of whether it was adopted in violation of the Administrative Procedures Act.  Accordingly, the qualified interest retained by petitioner in each GRAT here is an annuity payable for a specified term of 2 years.

C.  The Actuarial Value of the Qualified Interests

Having decided the nature and extent of the qualified interests retained by petitioner, we say a few words regarding the calculation of their actuarial value.  In compliance with section 2702(a)(2)(B), these interests are to be valued under section 7520.  There appears, however, to be some disagreement between the parties as to the mechanics of this computation.  They seem to differ with respect to how properly to account for the timing of the payments and the partial years involved where a GRAT is established other than on January 1.  Because we believe

---

[2] We note that sec. 25.2702-3(e), Example (5), Gift Tax Regs. (hereinafter Example 5), was cited and its alleged underlying rationale was alluded to in support of our holding in Cook v. Commissioner, 115 T.C. 15 (2000).  In that case, neither party challenged the validity of any regulations promulgated under sec. 2702, and it is not the typical practice of this Court to raise such issues sua sponte.  Suffice it to say at this point that we would have reached the same result absent any reliance on Example 5.  The spousal interests at issue there were in fact contingent in a sense violative of the policy behind sec. 2702. They would never take effect if the spouse were to predecease the grantor, and any value attributable thereto would pass to the donee.  The statute does not sanction treatment of such interests as qualified.

that such issues are more appropriately dealt with when fully articulated pursuant to Rule 155 proceedings, we defer from expressing any opinion on this matter at the present time.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.

Reviewed by the Court.

WELLS, CHABOT, SWIFT, RUWE, WHALEN, COLVIN, HALPERN, CHIECHI, LARO, VASQUEZ, GALE, and MARVEL, <u>JJ</u>., agree with this opinion.

BEGHE, FOLEY, and THORNTON, <u>JJ</u>., did not participate in the consideration of this opinion.